IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AK-CHIN INDIAN COMMUNITY<br>    42507 West Peters & Nall Road<br>    Maricopa, Arizona 85239, | ) ) ) ) | |
|           Plaintiff, | ) ) | |
| v. | ) ) | |
| DIRK KEMPTHORNE<br>    Secretary of the Interior<br>    1849 C Street N.W.<br>    Washington, D.C. 20240, | ) ) ) ) ) ) | |
| ROSS O. SWIMMER<br>    Special Trustee<br>    Office of Special Trustee for<br>    American Indians<br>    Department of the Interior<br>    1849 C Street N.W.<br>    Washington, D.C. 20240, | ) ) ) ) ) ) ) ) | Civil Action No. _____ |
| HENRY M. PAULSON<br>    Secretary of the Treasury<br>    1500 Pennsylvania Avenue N.W.<br>    Washington, D.C. 20220 | ) ) ) ) ) | |
|           Defendants. | ) ) | |

## **COMPLAINT**

I.    GENERAL NATURE OF THE ACTION

    1.    This is an action to seek redress of breaches of trust by the United States, acting by and through the defendants, in the management and accounting of trust assets, including funds and lands, belonging to the plaintiff, the Ak-Chin Indian Community ("the Community"), and to compel the defendants to provide a full and complete accounting of all

trust assets belonging to the Community and to correct the balances of the Community's trust fund accounts to reflect accurate balances.

2.      Involved in this action are funds and other assets, including approximately 21,840 acres of land, held in trust by the United States for the benefit of the Community. As is more fully set forth herein below, the trust funds are comprised of both judgment funds held in trust pursuant to federal law and funds that receive their trust character as proceeds of trust property, specifically the lease and sale of resources or lands that are held in trust. The United States has never fulfilled its duty to provide a full and adequate accounting of the trust funds belonging to the Community. Accordingly, the true balances of the Community's trust accounts are unknown.

3.      Pursuant to federal law, the defendants also have substantial fiduciary responsibilities with respect to and are charged with managing and accounting for the approximately 21,840 acres of land held in trust and the resources from such trust lands. These lands comprise a reservation located in the State of Arizona. Over the years, these lands have produced valuable natural resources and have been leased to third parties and/or to the government for rights-of-way, business uses, and other purposes. Despite the longstanding fiduciary responsibilities owed, the United States has never provided an accounting of its management of these trust assets as required by law.

4.      The defendants are government officers and trustee-delegates charged with carrying out the trust obligations of the United States. The record indicates that they have grossly mismanaged and continue to grossly mismanage the trust and have failed for over a

2

century to carry out the most basic and fundamental trust duties owed to the Community. The trust has been mismanaged in the following aspects, among others:

(a)    The defendants have failed to provide an adequate accounting of the trust assets, including funds, lands, and resources belonging to and beneficially owned by the Community;

(b)    The defendants have breached their trust obligation to maintain adequate records and to put in place adequate accounting systems in order to properly carry out their fiduciary obligations, including their duty to account;

(c)    The defendants have failed to fulfill their duty to ensure that tribal trust property and trust funds are protected, preserved, and managed so as to produce a maximum return to the Community consistent with the trust character of the property;

(d)    The defendants have failed to properly collect, invest, and disburse trust funds belonging to the Community in compliance with their fiduciary responsibilities and other federal statutory and regulatory law;

(e)    The defendants have breached their trust responsibility to preserve and protect adequate records of the trust and have spoliated irreplaceable trust records bearing upon their breaches of trust complained of herein; and

(f)    The defendants have failed to properly state the Community's account balances and have converted to their own use trust funds belonging to the Community, including, but not limited to, Indian moneys, proceeds of labor, 25 U.S.C. § 155.

(g)    The defendants have failed to maintain complete and adequate records of rights of way, including for roads, approved by defendants across the Community's

3

Reservation in violation of their trust responsibilities to the Community and further, have approved the creation of such rights of way in favor of state or local governmental entities or private individuals without the prior consent of the Community, or have approved the transfer of such rights of way without such prior consent and approval. The defendants have failed to ensure that compensation as required by federal law and regulation be paid to the Community in all cases for such rights of way.

II.    THE PARTIES

5.    The Plaintiff is the Ak-Chin Indian Community, a federally recognized Indian tribe that is the beneficial owner of funds and other assets that are held in trust on the Community's behalf by the United States and for which the Community has never received an adequate accounting as required by law.

6.    Defendant Dirk Kempthorne is the Secretary of the Interior and chief officer of the Department of the Interior, and as such is charged by law with carrying out the duties and responsibilities of the United States as trustee for the Community. He and his subordinates have custody and control of trust assets, including trust funds, belonging to the Community.

7.    Defendant Ross O. Swimmer is the Special Trustee for American Indians, a sub-cabinet level officer appointed by the President of the United States with the advice and consent of the Senate and reporting directly to the Secretary of the Interior. A number of Defendant Swimmer's duties are delineated in the Indian Trust Fund Management Reform Act of October 25, 1994, Pub. L. No. 103-412, 25 U.S.C. §§ 4042, et seq. ("the 1994 Act").

4

8.      Defendant Henry M. Paulson is the Secretary of the Treasury, and as such is the custodian of the tribal trust funds and is responsible for administering those funds and for preparing and maintaining certain records in connection therewith.

III.    JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1362, as the Community is a federally recognized Indian tribe and its claims arise under the Constitution and laws of the United States, including, but not limited to, the numerous statutes and regulations giving rise to the trust relationship between the United States and the Community.  This Court also has jurisdiction over this action under 28 U.S.C. § 1361 and 5 U.S.C. § 706, as this is an action to compel federal officials to perform a duty owed to the Community.

10.     The United States has waived its immunity from suit under § 702 of the Administrative Procedure Act ("the APA"), 5 U.S.C. § 702.  Section 702 waives sovereign immunity for all claims for relief other than money damages, including all forms of equitable relief, involving a federal official's action or failure to act.  See, e.g., Bowen v. Mass., 487 U.S. 879, 893-95, 108 S. Ct. 2722 (1988); Schnapper v. Foley, 667 F.2d 102, 107-08 (D.C. Cir. 1981) (noting that § 702 is "intended to eliminate the defense of sovereign immunity with respect to any action ... seeking relief other than money damages and based on the assertion of unlawful action by a federal officer").  The APA's waiver of sovereign immunity applies to any such suit, regardless of whether the suit is brought under the APA.  See, e.g., Cobell v. Norton ("Cobell VI"), 240 F.3d 1081, 1095-96 (D.C. Cir. 2001); Chamber of Commerce v. Reich, 74 F.3d 1322, 1328 (D.C. Cir. 1996).

5

11.    Venue in this Court is proper under 28 U.S.C. § 1391(e), as the defendants are officers and employees of the United States acting in an official capacity and a substantial part of the acts or omissions giving rise to the Community's claim occurred within this judicial district.

IV.    THE TRUST OBLIGATIONS OF THE UNITED STATES AND OF THE DEFENDANTS WITH RESPECT TO TRIBAL TRUST ASSETS

12.    The United States unquestionably owes substantial fiduciary obligations to the Community with respect to the management and administration of the Community's trust funds and other trust assets. See Cobell VI, 240 F.3d at 1098 (citing numerous cases).

13.    Tribal lands, associated resources, and the income derived therefrom constitute a substantial portion of the assets held by the United States in trust for the Community's benefit. Title to the land constituting the Community's reservation is held in trust by the United States, with the Community as the beneficial owner of the land and associated natural resources. Income is derived from, *inter alia*, the sale of these natural resources and the conveyance of certain interests in the Community's tribal trust land, including leases, easements, and rights of way. These assets and the income they produce form the core of the Community's tribal trust assets.

14.    Additional assets held in trust by the United States for the Community's benefit are derived from settlements or judgments entered by federal courts on various claims brought by the Community against the United States. This includes claims brought under the Indian Claims Commission Act of August 13, 1946, 60 Stat. 1049 (covering claims accruing before August 13, 1946) and/or the Indian Tucker Act, 28 U.S.C. § 1505 (covering claims

US2000 9678874.1

accruing after August 13, 1946). As trustee, the United States undertook to manage, invest, and distribute these funds as trust assets for the benefit of the Community.

15. Because the United States holds the Community's tribal lands and other assets in trust, it has assumed the fiduciary obligations of a trustee. As a trustee, the United States is charged with "'moral obligations of the highest responsibility and trust' ... and its conduct 'should therefore be judged by the most exacting fiduciary standards.'" Cobell VI, 240 F.3d at 1099 (quoting Seminole Community v. United States, 316 U.S. 286, 296, 62 S. Ct. 1049 (1942)). Because Congress established this trust by statute, "[c]ourts 'must infer that Congress intended to impose on trustees traditional fiduciary duties unless Congress unequivocally expressed an intent to the contrary.'" Cobell VI, 240 F.3d at 1099 (quoting NLRB v. Amax Coal Co., 453 U.S. 322, 330, 101 S. Ct. 2789 (1981)).

16. The longstanding trust relationship between the United States and the Community and the United States' resulting fiduciary duties are rooted in and derived from numerous statutes and regulations. See, e.g., Indian Nonintercourse Act, 25 U.S.C. § 177; Indian Long-Term Leasing Act, 25 U.S.C. § 396; Indian Mineral Leasing Act of 1938, 25 U.S.C. §§ 396a-396g; Federal Oil & Gas Royalty Management Act, 30 U.S.C. §§ 1701, et seq.; Indian Mineral Development Act of 1982, 25 U.S.C. §§ 2101, et seq.; Indian Trust Fund Management Reform Act of 1994, 25 U.S.C. §§ 4001, et seq.; 25 U.S.C. § 152; 25 U.S.C. §§ 157, 160; 25 U.S.C. §§ 155, 155b; 25 U.S.C. §§ 161a, 161b, 162 (repealed in 1938), 162a, 413; 25 U.S.C. §§ 311, 312, 318a, 319, 321, 323-28; 25 U.S.C. § 397; 25 U.S.C. §§ 398, et seq.; 25 U.S.C. § 399; 25 U.S.C. §§ 415-416j; 31 U.S.C. § 1321(a); 25 C.F.R. pt. 87; 25 C.F.R. pts. 150-51; 25 C.F.R. pt. 162; 25 C.F.R. pt. 166; 25 C.F.R. pt. 169;

7

25 C.F.R. pt. 211; 25 C.F.R. pt. 216; 25 C.F.R. pt. 225; 30 C.F.R. pt. 206; 43 C.F.R. § 3590.2(i).

17.     The 1994 Act, which, among other things, created the office of the Special Trustee for American Indians, served to recognize, reaffirm, and clarify the United States' preexisting fiduciary duties as derived from the relevant statutes and regulations, including the duty to account. Cobell VI, 240 F.3d at 1090, 1096. It was designed to "help rectify the government's longstanding failure" to fulfill its trust obligations. Id. The 1994 Act did not create the United States' fiduciary duties, nor did it "define and limit the extent of [the defendants'] obligations. Id. at 1100. Moreover, the 1994 Act does not, and was not intended to, serve as the sole source of those duties or of the Community's attendant rights. Id. at 1099.

18.     The statutes, regulations, and executive orders giving rise to the United States' fiduciary duties provide the "general contours" of those duties, but the specific details are filled in through reference to general trust law and "defined in traditional equitable terms." Id. Accordingly, the defendants' "actions must not merely meet the minimal requirements of administrative law, but must also pass scrutiny under the more stringent standards demanded of a fiduciary." Id. (citations and internal quotations omitted).

19.     As trustee of the Community's tribal trust assets, the United States owes, and continuously since the inception of the tribal trust program has owed, certain traditional fiduciary duties and responsibilities to the Community as a trust beneficiary. These duties include, but are not limited to, the duty to:

8

(a)    Perform a complete, accurate, and adequate historical accounting of all the trust property, with such accounting containing sufficient information to enable the Community to readily ascertain whether the trust has been and is being faithfully carried out;

(b)    Maintain adequate books and records with respect to the trust property, including, but not limited to, records of leases and other contractual arrangements giving rise to income from the trust property and records of the investment of tribal trust assets;

(c)    Refrain from self-dealing or otherwise benefiting from management of the trust property;

(d)    Take reasonable steps to preserve and protect trust property;

(e)    Take reasonable steps to bring and enforce claims held by the trust;

(f)    Use reasonable skill and care to invest and deposit trust funds in such a way as to maximize the productivity of trust property within the constraints of law and prudence; and

(g)    Take reasonable steps to ensure that trust property is used for its highest and best use.

V.    BREACHES OF TRUST BY THE DEFENDANTS

20.    The United States, acting by and through the defendants, has consistently and egregiously failed to comply with these and other fiduciary obligations and continues to do so. Its breaches of trust include, but are not limited to:

(a)    Failure to provide and unconscionably delaying the performance of a complete, accurate, and adequate accounting of trust property;

US2000 9678874.1

(b)    Failure to maintain adequate books and records with respect to the trust property, including, but not limited to, records of leases and other contractual arrangements giving rise to income from the trust property and records of the investment of tribal trust assets;

(c)    Failure to refrain from self-dealing or otherwise benefiting from management of the trust property;

(d)    Failure to take reasonable steps to preserve and protect trust property;

(e)    Failure to take reasonable steps to bring and enforce claims held by the trust;

(f)    Failure to use reasonable skill and care to invest and deposit trust funds in such a way as to maximize the productivity of trust property within the constraints of law and prudence; and

(g)    Failure to ensure that trust assets are used for their highest and best use.

21.    Due to these and other breaches of the fiduciary duties owed by the United States, the Community does not know, and has no way of ascertaining, the true state of its trust assets, including funds and related accounts holding such funds; what amounts should have been credited to the Community and deposited in these accounts; what amounts should have been paid to the Community; how much of the Community's property has been diverted or converted to other uses; to what extent the United States failed to maximize profits; or whether the United States has attained fair market value for leases and sale of trust assets.

22.    The United States' breaches of its fiduciary obligations with respect to Indian trust assets have been repeatedly recognized and routinely condemned by the United States

US2000 9678874.1

General Accounting Office, the United States Inspector General for the Interior Department, and the United States Office of Management and Budget, among others.  See Cobell VI, 240 F.3d at 1090-91 (citing reports criticizing the mismanagement of Indian trust assets).

23.    The United States' breaches of its fiduciary obligations with respect to Indian trust assets have also been recognized and condemned by Congress.  After a series of oversight hearings, Congress issued a report entitled "Misplaced Trust: The Bureau of Indian Affairs' Mismanagement of the Indian Trust Fund," H.R. Rep. No. 102-499 (1992).  In this report, Congress noted "significant, habitual problems in BIA's ability to fully and accurately account for trust fund moneys, to properly discharge its fiduciary responsibilities, and to prudently manage the trust funds." Id. at 2.  Congress further concluded that the defendants had "utterly failed to grasp the human impact of [their] financial mismanagement of the Indian trust fund." Id. at 5.  While the Interior Department pledged reforms in response to this report, it did little to improve its mismanagement of Indian trust assets.  Cobell VI, 240 F.3d at 1090.

24.    The 1994 Act sought to remedy the United States' long-standing failure to discharge its trust obligations.  It "reaffirmed and clarified preexisting [trust] duties; it did not create them." Id. at 1100. Nor did it alter the nature or the scope of the fiduciary duties that the defendants owe to the Community and to other tribal trust beneficiaries. Id.

25.    Among the duties enumerated in the 1994 Act, section 102 makes clear that the Community and other tribal trust beneficiaries are owed an accounting for "all funds held in trust by the United States for the benefit of an Indian tribe ... which are deposited or invested pursuant to the Act of June 24, 1938." 25 U.S.C. § 4011(a).  The 1994 Act thus

US2000 9678874.1

"reaffirms the government's preexisting fiduciary duty to perform a complete historical accounting of trust fund accounts." Cobell VI, 240 F.3d at 1102.

26.    The 1994 Act also created the Office of Special Trustee for American Indians. 25 U.S.C. § 4042.  Congress' stated purposes in creating this office were, *inter alia*, "to provide for more effective management of, and accountability for the proper discharge of, the Secretary's trust responsibilities," and to "ensure the implementation of all reforms necessary for the proper discharge of the Secretary's trust responsibilities ... ." 25 U.S.C. § 4041.

27.    The statutory responsibilities of the Special Trustee conferred under the 1994 Act include, *inter alia*:

(a)    To "oversee all reform efforts ... to ensure the establishment of policies, procedures, systems and practices to allow the [Interior] Secretary to discharge his trust responsibilities ... ." 25 U.S.C. § 4043(b)(1);

(b)    To "monitor the reconciliation of tribal trust accounts ... to ensure that the Bureau [of Indian Affairs] provides the account holders with a fair and accurate accounting of all trust accounts," 25 U.S.C. § 4043(b)(2)(A); and

(c)    To "ensure that the Bureau establishes appropriate policies and procedures, and develops necessary systems, that will allow it ... properly to account for and invest, as well as maximize," subject to requirements of law, "the return on the investment of all trust fund monies," and "to prepare accurate and timely reports to account holders ... on a periodic basis regarding all collections, disbursements, investments and returns on investments related to their accounts."  25 U.S.C. § 4043(b)(2)(B).

12

28.    Notwithstanding the remedial purpose of the foregoing legislation, the mandates of the 1994 Act – like the government's longstanding fiduciary duties – have not been carried out, and the defendants remain in violation of their accounting and other fiduciary obligations.  In addition to the breaches of trust duties recited in paragraphs 4 and 19-23 above, the defendants have failed to comply with the enumerated duties listed in the 1994 Act.  Furthermore, Defendant Swimmer has failed to discharge his responsibilities as Special Trustee or to take any meaningful steps to fix a trust management system that remains broken after more than a century of defendants' malfeasance, recalcitrance, and neglect.

29.    The defendants also have failed to comply with other statutory directives intended to address their ongoing breaches of preexisting trust duties.  By the Act of December 22, 1987, Pub. L. No. 100-202 (101 Stat. 1329), Congress directed that the defendants (1) audit and reconcile tribal trust funds and (2) provide the tribal trust beneficiaries with an accounting of such funds.  Congress reaffirmed the mandates of the 1987 Act in subsequent statutes, namely, the Act of October 23, 1989, Pub. L. No. 101-121, 103 Stat. 701; the Act of November 5, 1990, Pub. L. No. 101-512, 104 Stat. 1915, and the Act of November 3, 1991, Pub. L. No. 102-154, 105 Stat. 990.  These acts, like the 1994 Act, are reaffirmations of preexisting obligations rather than sources of new obligations.  Even after nearly twenty years, these statutory requirements have never been met, and the defendants remain in derogation of their trust duties.

30.    The reports produced by government contractor Arthur Andersen LLP (the "AA Reports") and provided to the Community and other tribal trust beneficiaries fall far

13

short of satisfying the defendants' fiduciary duty to provide a complete, accurate, and adequate accounting.    Even the Bureau of Indian Affairs ("BIA") within the Interior Department has admitted that the AA Reports were not full and complete accountings. See Bureau of Indian Affairs' Proposed Legislative Options in Response to Tribal Trust Fund Reconciliation Project Results at 12 (Dec. 1996) ("Despite five years of effort and the expenditure of $21 million, the [AA] Project provides a less than complete accounting of the state of the Tribal trust funds.").    Shortcomings of the AA Reports include, but are not limited to, the fact that the Reports:

      (a)    Analyzed trust fund accounts only for the limited time period of Fiscal Years 1973-1991;

      (b)    Were not based on or prepared in accordance with generally accepted accounting and auditing standards;

      (c)    Were premised on the erroneous assumption that complete, accurate, and adequate accountings could be conducted based on unverified information provided by the BIA; and

      (d)    Were based on accounts for which records and information were non-existent or could not be located.

See, e.g., U.S. General Accounting Office, Report to the Committee on Indian Affairs, U.S. Senate, Financial Management, BIA's Tribal Trust Fund Account Reconciliation Results, GAO/AIMD-96-63 (May 1996); U.S. General Accounting Office, Testimony before the Committee on Indian Affairs, U.S. Senate, Indian Trust Funds, Tribal Account Balances, GAO-02-420T at 2 (Feb. 7, 2002).

US2000 9678874.1

31.    Congressional recognition of the defendants' continued and ongoing failure to satisfy their fiduciary duty to render a complete, accurate, and adequate accounting is evidenced by the inclusion, in each Interior Department Appropriations Act since 1990, of a provision stating that "the statute of limitations shall not commence to run on any claim concerning losses to or mismanagement of trust funds until the affected tribe ... has been furnished with an accounting of such funds from which the beneficiary can determine whether there has been a loss." See, e.g., Act of November 5, 1990, Pub. L. No. 101-512, 104 Stat. 1915; Act of November 13, 1991, Pub. L. No. 102-154, 105 Stat. 990; Act of October 5, 1992, Pub. L. No. 102-381, 106 Stat. 1374; Act of November 11, 1993, Pub. L. No. 103-138, 107 Stat. 1379; Act of September 30, 1994, Pub. L. No. 103-332, 108 Stat. 2499; Act of April 26, 1996, Pub. L. No. 104-134, 110 Stat. 1321; Act of September 30, 1996, Pub. L. No. 104-208, 110 Stat. 3009; Act of November 14, 1997, Pub. L. No. 105-83, 111 Stat. 1543; Act of October 21, 1998, Pub. L. No. 105-277, 112 Stat. 2681; Act of November 29, 1999, Pub. L. No. 106-114, 113 Stat. 1501; Act of October 11, 2000, Pub. L. No. 106-291, 114 Stat. 922; Act of November 5, 2001, Pub. L. No. 107-63.

## COUNT ONE

32.    The Community restates and incorporates herein the allegations of paragraphs 1 through 31 above.

33.    The United States, acting through the defendants, owes to the Community fiduciary duties of the highest responsibility and trust with respect to property that it holds in trust for the Community's benefit.  These statutorily-derived duties, which may be either express or implied in law, are akin to those stated under the common law of trusts.

US2000 9678874.1

34.    Among the duties that the defendants owe is the duty to provide the Community with a complete, accurate, and adequate accounting of all property held in trust by the United States for the Community's benefit.    The accounting obligation that the defendants owe to the Community requires, *inter alia*, an accounting report that "contain[s] sufficient information for the [Community] readily to ascertain whether the trust has been faithfully carried out." Cobell VI, 240 F.3d at 1103 (internal quotation omitted).

35.    The defendants have, from the inception of the trust to the present, failed to fulfill these fiduciary obligations, and this failure constitutes a breach of the defendants' fiduciary duties to the Community and a violation of federal law.

36.    Specifically, the defendants have, *inter alia*, failed to provide the Community with a complete, accurate, and adequate accounting of the Community's trust assets, and this failure constitutes a breach of the defendants' fiduciary duties to the Community and a violation of federal law.

37.    The Community is entitled to a declaration that the AA Report prepared by the defendants' contractors does not constitute the complete, accurate, and adequate accounting required by federal law.

38.    The Community is entitled to a further declaration that the defendants have breached the fiduciary duties they owe to the Community by, *inter alia*, failing to provide the Community with a complete, accurate, and adequate accounting of the Community's trust assets as required by law.

39.    The Community is entitled to a further declaration (1) delineating the defendants' fiduciary duties to, among other things, enable proper discharge of their

US2000 9678874.1

accounting obligation and (2) finding that the defendants have breached their duties so declared.

## COUNT TWO

40.    The Community restates and incorporates herein the allegations of paragraphs 1 through 39 above.

41.    There is no indication that the defendants will, of their own accord, depart from their longstanding and continuing pattern of failure to comply with their fiduciary duties to the Community.

42.    The Community is entitled to injunctive relief directing the defendants to provide a complete, accurate, and adequate accounting of the Community's trust assets, including, but not limited to, funds under the custody and control of the United States, and to comply with all other fiduciary duties as determined by this Court.

43.    The Community is further entitled to make exceptions and objections to the accounting provided, to a restatement of their trust fund account balances in conformity with the ultimate and complete accounting, and to any additional equitable relief that may be appropriate (e.g., disgorgement, equitable restitution, or an injunction directing the trustee to take action against third parties).

44.    The Community is entitled to further injunctive relief directing the defendants to bring themselves into conformity with their fiduciary obligations and otherwise address breaches of trust found by the Court.

17

WHEREFORE, THESE PREMISES CONSIDERED, THE PLAINTIFF PRAYS:

1.     For a decree construing the trust obligations of the defendants to the Community, including, but not limited to, the duty to provide a complete, accurate, and adequate accounting of all trust assets belonging to the Community and held in trust by the defendants.

2.     For a decree that the United States, acting through the defendants, has been in breach of its trust obligations since the inception of this trust and continues to be in breach of those duties today, specifically including, *inter alia*, its fiduciary duty to provide a complete, accurate, and adequate accounting of all trust assets belonging to the Community and held in trust by the United States.

3.     For a decree that the AA Reports do not constitute the complete, accurate, and adequate accounting that the defendants are obligated to provide to the Community.

4.     For a decree delineating the fiduciary duties owed by the defendants to the Community with respect to the management and administration of the trust assets belonging to the Community.

5.     For a decree directing the defendants (1) to provide a complete, accurate, and adequate accounting of the Community's trust assets, including, but not limited to, funds under the custody and control of the United States and (2) to comply with all other fiduciary duties as determined by this Court.

6.     For a decree providing for the restatement of the Community's trust fund account balances in conformity with this accounting, as well as any additional equitable

relief that may be appropriate (e.g., disgorgement, equitable restitution, or an injunction directing the trustee to take action against third parties).

7.      For a decree requiring the defendants to provide to the Community all material information regarding the management and administration of the trust assets belonging to the Community and held in trust for its benefit by the defendants, including but not limited to all relevant information regarding rights of way on the Community's trust land.

8.      For an award of the Community's costs of suit, including, without limitation, attorneys' fees under the Equal Access to Justice Act and other statutes as well as general equitable principles, and the fees and costs of expert assistance.

9.      For such other and further relief as the Court, as a Chancellor sitting in equity, may deem just and proper.

US2000 9678874.1

Respectfully submitted this _29th_ day of December, 2006.


_____
KEITH HARPER
D.C. Bar No. 451956
G. WILLIAM AUSTIN
D.C. Bar No. 478417
Kilpatrick Stockton LLP
607 14th Street, N.W.
Suite 900
Washington, D.C.  20005
(202) 508-5800

EDWARD R. ROYBAL
Application Pending for the District Court for the
District of Columbia
Strickland & Strickland Law Offices
Counsel for the Ak-Chin Indian Community
6124 East Brown Rd. Suite 101
Mesa, Arizona 85205
(480) 854-8474


Attorneys for Plaintiff
Ak-Chin Indian Community

US2000 9678874.1

E 06-2245
JR

## CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Ak-Chin Indian Community    *88684* | Dirk Kempthorne, Secretary of the Interior; Ross O. Swimmer, Special Trustee and Henry M. Paulson, Secretary of the Treasury |

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Pinal County, AZ
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Washington, D.C.
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
Keith M. Harper and G. William Austin, III
Kilpatrick Stockton LLP
607 14th Street N.W., Suite 900
Washington, D.C. 20005
(202) 508-5800

ATTORNEYS
Alb
Uni
950
Wa

```
CASE NUMBER  1:06CV02245

JUDGE: James Robertson

DECK TYPE: General Civil

DATE STAMP: 12/29/2006
```

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ⊙ 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHI
FOR PLAINTIFF AN

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**
- ☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**
- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**⊙ E. General Civil (Other)**   OR   **○ F. Pro Se General Civil**

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☒ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ **530 Habeas Corpus-General** <br> ☐ **510 Motion/Vacate Sentence** | ☐ **442 Civil Rights-Employment** (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) <br><br> *(If pro se, select this deck)* | ☐ **895 Freedom of Information Act** <br> ☐ **890 Other Statutory Actions** (if Privacy Act) <br><br> *(If pro se, select this deck)* | ☐ **152 Recovery of Defaulted Student Loans (excluding veterans)** |

| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ **710 Fair Labor Standards Act** <br> ☐ **720 Labor/Mgmt. Relations** <br> ☐ **730 Labor/Mgmt. Reporting & Disclosure Act** <br> ☐ **740 Labor Railway Act** <br> ☐ **790 Other Labor Litigation** <br> ☐ **791 Empl. Ret. Inc. Security Act** | ☐ **441 Voting (if not Voting Rights Act)** <br> ☐ **443 Housing/Accommodations** <br> ☐ **444 Welfare** <br> ☐ **440 Other Civil Rights** <br> ☐ **445 American w/Disabilities-Employment** <br> ☐ **446 Americans w/Disabilities-Other** | ☐ **110 Insurance** <br> ☐ **120 Marine** <br> ☐ **130 Miller Act** <br> ☐ **140 Negotiable Instrument** <br> ☐ **150 Recovery of Overpayment & Enforcement of Judgment** <br> ☐ **153 Recovery of Overpayment of Veteran's Benefits** <br> ☐ **160 Stockholder's Suits** <br> ☐ **190 Other Contracts** <br> ☐ **195 Contract Product Liability** <br> ☐ **196 Franchise** | ☐ **441 Civil Rights-Voting (if Voting Rights Act)** |

**V. ORIGIN**

◉ **1 Original Proceeding**   ○ **2 Removed from State Court**   ○ **3 Remanded from Appellate Court**   ○ **4 Reinstated or Reopened**   ○ **5 Transferred from another district (specify)**   ○ **6 Multi district Litigation**   ○ **7 Appeal to District Judge from Mag. Judge**

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Action for violation of defendants' fiduciary duties to plaintiff. Title 25 of the U.S.Code and various other statutes and regs. 25 USC§161a, 161b, 162, 162a

| **VII. REQUESTED IN COMPLAINT** | ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** Equitable & declaratory relief <br> **JURY DEMAND:** | Check YES only if demanded in complaint <br> YES ☐   NO ☐ |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☒   NO ☐   If yes, please complete related case form.

DATE _12/29/06_   SIGNATURE OF ATTORNEY OF RECORD _~~signature~~_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

**I.**   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

**III.**   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

**IV.**   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

**VI.**   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

**VIII.**   RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.