IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE AK-CHIN INDIAN COMMUNITY, | ) ) | |
| | ) | |
| Plaintiff, | ) ) | |
| | ) | |
| v. | ) | Case No. 06-CV-02245-JR |
| | ) | Judge James Robertson |
| DIRK KEMPTHORNE, ROSS O. | ) | **(Electronically filed on January 18, 2008)** |
| SWIMMER and HENRY M. | ) | |
| PAULSON, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S STATUS REPORT

### I.  INTRODUCTION

The Plaintiff-Beneficiary, the Ak-Chin Indian Community ("Ak-Chin"), submits its Status Report pursuant to this Court's order of December 19, 2007 denying Trustee-Delegates' Motion to Remand brought by defendants Dirk Kempthorne, Ross O. Swimmer and Henry Paulson ("Trustee-Delegates").

The remand issue alone has delayed progress in this case for nearly six months, thereby prejudicing Ak-Chin by delaying enforcement of its right to obtain information from its trustee related its  trust lands including information relevant to rights-of-way, easements, leases and other encumbrances on trust land and cadastral surveys.  Without this critical information, Ak-Chin sits vulnerable  in its dealings with third parties and is unable to effectively manage development of its Reservation lands.  Now that this Court has properly rejected Trustee-Delegates' theory of the case, and refused to remand the action, it should proceed to direct the production of the trust information that Ak-Chin so desperately needs to

protect its interests.  *See* Ak-Chin's Updated Case Management Plan and Phase I Scheduling Order (hereinafter "the Updated CMO", a copy of which is attached hereto as Exhibit "1") at ¶ 6.

This Court's immediate intervention is desperately needed.  Ak-Chin is located in an area experiencing unprecedented growth and, as a consequence, obtaining the records regarding its trust lands and other assets is absolutely critical to protect its interests.  Without such records and information, which are within the custody and control of Trustee-Delegates, Ak-Chin is unable to protect its rights in connection with ongoing negotiations and other dealings with developers, local governments, the State of Arizona ("State") and other third parties regarding the expansion of roads, infrastructure development, use of rights-of-way and innumerable other matters.  As a result, Ak-Chin is vulnerable, at a significant disadvantage and unable to fully protect its interests in outside dealings.

The information in question is basic information - *e.g.,* all documents related to rights-of-way, easements, leases and other encumbrances on trust land, and cadastral surveys. When, for example, the State or local government adjacent to the Reservation asserts an interest in a road, Ak-Chin needs the supporting documentation kept by its trustee to effectively respond to these third party other government.  The demand for such information is unremarkable, and any other trustee would provide it as a matter of course. Ak-Chin has repeatedly requested this information from Trustee-Delegates, but to no avail. The refusal or inability of Ak-Chin's trustee to supply this critical trust information has, in short, placed Ak-Chin in the most precarious of positions rendering it unable to protect its vital interests.  Time is of the essence.  Growth continues unabated.  Every day issues arise. Every day Ak-Chin is more vulnerable.  The Court's involvement in making long-overdue

2

information regarding Ak-Chin's trust assets available to the Plaintiff-Beneficiary is thus absolutely necessary.

## II. TRUSTEE DELEGATES HAVE UTTERLY FAILED TO COMPLY WITH THEIR DUTY TO FURNISH INFORMATION TO AK-CHIN THAT IS ESSENTIAL FOR AK-CHIN TO PROTECT ITS INTEREST.

To fully appreciate the necessity for immediate action, it is important to have a sense of Ak-Chin's history, as well as its current situation.

### A.    Ak-Chin Is Currently Experiencing a Period of Hyper-growth and Requires Critical Information from its Trustee-Delegates

Ak-Chin is located approximately 35 miles south of Phoenix, Arizona adjacent to the town of Maricopa, Arizona, one of the fastest growing suburbs of Phoenix.  (Declaration of Delia Carlyle ("Carlyle Decl."), at ¶ 3, attached hereto as Exhibit 2).[1]  Ak-Chin, a small tribe with 767 enrolled members, once inhabited a small, rural farming village.  (*Id*.)  Today, like many Phoenix suburbs, Ak-Chin is being significantly impacted by unprecedented hyper-growth in its area.  (*Id*. at ¶ 4.)   By way of example, in the year 2000, there were approximately 1,000 people in the adjacent town of Maricopa.  (*Id*.)  In 2004, the town had grown to over 5,000 people and one year later, the population swelled to approximately 18,000.  (*Id*.)  The town of Maricopa projects that in a just a few years its population will exceed 100,000 people – a 100 fold increase in less than a decade.  (*Id*.)  This explosive growth has brought "big-city" problems to Ak-Chin, such as an increase in traffic, congestion and other effects of rapid urban expansion.  (*Id*. at ¶ 5.)  Because of the hyper-

---

[1] Ms. Caryle's declaration was originally filed as an exhibit to Plaintiff-Beneficiary's Supplemental Mem. in Opp'n to Defs.' Mot. for Remand and Stay of Litigation, filed on October 22, 2007 [Dkt. No. 23].

growth in the area, roadway infrastructure, in particular, is a major problem for Ak-Chin and its neighbors. (*Id*.)

Trustee-Delegates hold all relevant information regarding roadways, rights-of-way, easements, leases and the encumbrances crossing Ak-Chin's reservation (not to mention cadastral surveys and other related information) which has been directly impacted by hyper-growth. (*Id*. at ¶6.) Ak-Chin has made many good faith attempts to retrieve documentation from Trustee-Delegates regarding information of this nature, but to no avail. (*Id*. at ¶7.) Trustee-Delegates' failure to produce critical documents to Ak-Chin makes it impossible for Ak-Chin to effectively protect its rights or negotiate with local developers, the State or local governments regarding road expansion and other developments affecting its reservation. (*Id*. at ¶8.) While Trustee-Delegates' failure to produce information to Ak-Chin regarding its trust assets is not a new problem for Ak-Chin – indeed, for decades, Ak-Chin has had difficulty obtaining trust records from Trustee-Delegates – because of the recent hyper-growth in its area, obtaining this information is now a top priority. (*Id*. at ¶9.)

**B.    Trustee-Delegates Have Failed to Produce Critical Information Regarding Ak-Chin's Assets Through Informal Discovery.**

On December 29, 2006, Ak-Chin initiated this action for an accounting of its trust funds *and*, importantly, to enforce the duty that Trustee-Delegates provide all information regarding the management and administration of Ak-Chin's trust assets, such as rights-of-way and easements affecting Ak-Chin's reservation. (*Id*. at ¶10.) During the first meeting of the parties' counsel in this action, on April 11, 2007, Trustee-Delegates took the position that Ak-Chin was not entitled to discovery in this case, contending that Ak-Chin's case involves nothing more than the Court's "review on an administrative record." *See* Fed. R. Civ. P.

4

26(a)(1)(E)(i) and Local Rule 16.3(b)(1); Joint Report Pursuant to Fed. R. Civ. P. 26(f) and Local Rule 16.3, at p. 3-5.  Trustee-Delegates also withheld Initial Disclosures on those same grounds.[2]

During this same meeting, Ak-Chin's counsel informed Trustee-Delegates' counsel of the critical nature of Ak-Chin's request for information regarding Ak-Chin's assets in light of the impact of hyper-growth in its area.  Trustee-Delegates' counsel agreed to produce information to Ak-Chin on an "informal" basis.

At a subsequent meeting on April 27, 2007, the Trustee-Delegates' counsel represented that they had already begun to collect for Ak-Chin the type of information identified by Ak-Chin's counsel during the April 11th meeting, and also represented that such information would be provided in June or July, 2007.  On June 14, 2007, after not having received any responsive information despite Trustee-Delegates' counsel's representation to Ak-Chin and this Court that they were "in the process of copying and imaging and reviewing" responsive documents to Ak-Chin's request (*see* Tr. of June 6, 2007 Status Conference, 44:22-45:01; 47:14-18), Ak-Chin provided Trustee-Delegates' counsel with a listing of four roads, a pipeline and identified three narrow categories of supporting documentation that it required as a top-priority.  (Carlyle Decl. at ¶11 and Ex. A thereto.)  Nevertheless, citing privilege and confidentiality concerns, counsel for Trustee-Delegates refused to provide the requested information until a protective order was in place in the Ak-

---

[2] The United States served Initial Disclosures in Ak-Chin's Court of Federal Claims action, but only provided very limited information and promised to produce documents at a later date, most of which has not yet been provided, despite Ak-Chin's counsel's request for this promised documentation.  *See* Exhibit 3 (Email correspondence between Bill Austin and Laura Maroldy dated July 26, 27, 30 and August 6, 2007).  The United States also moved to dismiss Ak-Chin's Court of Federal Claims action pursuant to 28 U.S.C. § 1500.  This motion is currently pending.

US2000 10572540.1

Chin proceeding before Judge Hewitt in the Court of Federal Claims – even though the requested information was not confidential and Ak-Chin requested the information as part of this proceeding.  Nevertheless, Ak-Chin attempted to accommodate defendants' request and, in fact, on July 19, 2007, Judge Hewitt issued such an order, whereupon Trustee-Delegates had no impediment for producing the requested information contained in Ak-Chin's June 14th request.  *Ak-Chin Indian Community v. United States,* No. 06-932L (Fed. Cl.) (Protective Order issued July 19, 2007).

After the protective order was issued, Ak-Chin still did not receive any of the information requested in its June 14th request.  Plaintiff-Beneficiary's counsel repeatedly attempted to follow up with Trustee-Delegates' counsel requesting further information pursuant to Ak-Chin's June 14th request.  (*See* Exhibit 3.)  It was not until August 14, 2007, that Trustee-Delegates provided Ak-Chin with a redacted Title Status Report – the most basic of basic information – accompanied by a solemn promise to provide more documents relating to the June 14th request at a later date.  (Carlyle Decl. at ¶12 and Ex. B thereto.) Trustee-Delegates' counsel specifically promised an "additional increment of documents" responsive to Ak-Chin's June 14th request – those that represent the most pressing need for purposes of ongoing development in and around Ak-Chin's reservation – and explained that they were simply being "imaged" and would be submitted pending confidentiality review. (*Id.* at ¶12 and Ex. B thereto.)

Despite the clear admission by Trustee-Delegates' counsel that responsive documents were not only available for distribution but also forthcoming, *Ak-Chin has yet to receive any information requested in its June 14th request or correspondence from Trustee-Delegates'*

6

*counsel explaining the reason for the undue delay to date*. (*See* Ex. B and Transcript of June 6, 2007 Status Conference, 44:22-45:01; 47:14-18.)

###### C.    The Clear Need for this Court's Intervention.

What the foregoing record indicates is that "informal" discovery is a farce. Trustee-Delegates have merely used it as a tool to string along Ak-Chin in the hopes that it will believe the Trustee-Delegates' next promise which ultimately, invariably, will be broken. What is equally clear is that until this Court orders production of information, it will not happen. In the meantime, Ak-Chin will continue to suffer and to be rendered vulnerable by Trustee-Delegates.

In light of this history, Ak Chin asks that this Court immediately enforce its right and the Trustee-Delegates' fiduciary duty to provide "information … reasonably necessary to enable [Ak Chin] to enforce [its] rights under the trust …." RESTATEMENT (SECOND) OF TRUSTS, § 173 ("Duty to furnish Information") (1959). *See also Clifford v. United States*, F.3d 144, 152 (D.C. Cir. 1998) (A trust beneficiary is entitled to receive "all information necessary to protect his rights under the trust."). What Ak-Chin needs, among other things, is information and documentation to protect its interest vis-à-vis third parties (*e.g.*, states, local municipalities, local businesses, developers). And it is beyond peradventure that where a beneficiary requests information about its trust *corpus*, the trustee (or in this case, the Trustee-Delegate) is under a strict duty to provide the requested information and, even without a request, to ensure the beneficiary has whatever "material facts affecting the interest of the beneficiary which [the Trustee-Delegate] knows the beneficiary does not know and which the beneficiary needs to know for his protection in dealing with a third person with respect to his interest." RESTATEMENT (SECOND) OF TRUSTS, comment d, ¶ 173.

As documented *supra* and in Ak-Chin's supplemental brief in opposition to the motion to remand filed October 22, 2007, the need for such information and related documentation here could not be more apparent. The vital interests of Ak-Chin hang in the balance. And the information needed is a textbook example of the precise type of information that a trustee must provide to a beneficiary for the beneficiary's "protection in dealing with third . . . person[s]" with or without request. Here, the trustee has failed this basic obligation and Ak-Chin needs immediate relief to prevent further irreparable harm.

This Court has inherent equitable authority to provide the relief requested and to order Trustee-Delegates to comply with their fiduciary obligation to furnish this critical information. *See, e.g., Village of Brookfield v. Pentis*, 101 F.2d 516, 520-21 (7th Cir. 1939) ("Courts of equity have original inherent jurisdiction to decree and enforce trusts").[3] It is this Court's obligation to protect the interest of the beneficiary of this trust from such harmful breaches. *See, e.g, Crawford v. La Boucherie Bernard Ltd.,* 815 F.2d 117, 120 (D.C. Cir. 1987), *cert. denied*, 484 U.S. 943 (1987) ("Trust law contemplates the use of broad and flexible equitable remedies as means for dealing with breaches of fiduciary duty, and it imposes the obligation upon the courts to use the remedy that is most advantageous to the participants and that will most closely effectuate the purposes of the trust.") (citation omitted). To be sure, much of the information Ak-Chin seeks is obtainable through discovery. The right of beneficiaries to obtain their trust information, however, is quite apart from any discovery rules and is enforceable as a matter of trust law applicable in this case. *See Cobell v. Norton*, 240 F.3d 1081, 1093 (D.C. Cir. 2001) ("As trustee delegates these

---

[3] The Court also clearly has case management authority to direct and supervise Trustee-Delegates' long-overdue production. *See, e.g.*, Fed. R. Civ. P. 16(c)(6) (specifically authorizing the Court's entry of "orders affecting disclosures and discovery . . . .").

US2000 10572540.1

officials ha[ve] a clear obligation to maintain trust records and furnish such records to beneficiaries upon request." (emphasis added)); *Clifford v. United States,* 136 F.3d 144, 152 (D.C. Cir. 1998) (The beneficiary of a trust is entitled to receive "information necessary to protect his rights under the trust.")[4]; *Eddy v. Colonial Life Ins. Co. of Am.*, 919 F.2d 747, 750 (D.C. Cir. 1990) ("The duty to disclose material information is the core of a fiduciary's responsibility, animating the common law of trusts ...."); RESTATEMENT (SECOND) OF TRUSTS, comment c, § 173 (1959) ("[T]he beneficiary is always entitled to such information as is necessary to enable him to enforce his rights under the trust or to prevent or redress a breach of trust.").[5] *See also Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 286-87 (D.C. Cir. 1993) ("the beneficiary of a trust may maintain a suit to compel the trustee to perform his duties as trustee or to redress a breach of trust").

To ensure that Ak-Chin will obtain the requisite information in the near term, Ak-Chin respectfully suggests the following schedule (as provided in the attached Case Management Order) be established:

Plaintiff-Beneficiary will serve on Trustee-Delegates and file with the Court by no later than March 1, 2008, a listing of information that is to be furnished by Trustee-Delegates. Trustee-Delegates will have 30 days from service to provide such material. If Trustee-Delegates object to production of such material or need clarification, they must file

---

[4] The UNIFORM TRUST CODE ("Code") provides that a trustee shall ensure beneficiaries are aware "of the material facts necessary for them to protect their interests" and "shall promptly respond to a beneficiary's request for information related to the administration of the trust." Code § 813 (2005).

[5] Accordingly, a beneficiary has a right to demand from a trustee all information concerning the trust "for which he has reasonable use," and the trustee's failure to provide that information is a breach of trust. G. BOGERT & G. BOGERT, THE LAW OF TRUSTS AND TRUSTEES § 961 (Rev. 2d ed. 2005). Where a trustee refuses to provide such information, the court may order its production and the trustee must bear the expense of such a proceeding. *Id.*

US2000 10572540.1

an appropriate motion for protective order by no later than 15 days after service of the Ak-Chin's request.  If the Trustee-Delegates fail to object timely or seek enlargement of time, they will thereafter waive their right to object and shall provide the requested information. (*See* Ak-Chin's Updated CMO at ¶ 6.)

This is a matter of utmost importance for Ak-Chin.  For this Plaintiff-Beneficiary, its prompt resolution takes precedence over the other case management issues addressed in this Status Report.

## III.    OTHER DEVELOPMENTS IN THE LITIGATION PRIOR TO THE TEMPORARY STAY ISSUED ON JULY 2, 2007.

### A.    Ak-Chin's Claim for an Equitable Accounting.

As noted above, Ak-Chin also has initiated this action for an equitable accounting of its trust funds and other assets held by Trustee-Delegates.  Ak-Chin seeks, *inter alia*, a declaration that Trustee-Delegates owe a trust duty to provide a complete and accurate accounting of all such funds and assets and that they are in violation of this duty.  Further, to the extent that the accounting demonstrates errors in the account balance, whether positive or negative, Ak-Chin seeks a decree directing the restatement and correction of its trust account balances reflecting the results of the accounting.  Finally, the accounting may reveal other breaches of trust that will require further equitable relief which may be appropriate under the circumstances (*e.g.*, an order mandating the Trustee to bring an action against a third party, *see, e.g.*, RESTATEMENT (SECOND) OF TRUSTS § 177 ("Duty to Enforce Claims")) or reveal other actions that Ak-Chin may have to commence in other tribunals.

Contrary to what Trustee-Delegates contend, this is no ordinary APA review case, as this Court has now recognized. (*See* 12/19/07 Memo Order at 8-9.)  As set forth in the

US2000 10572540.1

Complaint, Ak-Chin's claim is an action to enforce trust obligations – both express and implied – arising under the laws of the United States. As such, this case is expressly pleaded as an action under 28 U.S.C. § 1331.

This action thus involves the inherent equitable powers of this Court to enforce the trust created by federal statutes – and not the mere review of an administrative record as Trustee-Delegates have contended. Indeed, it is Trustee-Delegates' failure to fulfill their accounting obligations owed Ak-Chin for decades that necessitates this suit in the first place. As a result, "[t]he narrower judicial powers appropriate under the APA do not apply [in this suit] . . . because the underlying lawsuit is both an Indian case and a trust case in which trustees have egregiously breached their fiduciary duties." *Cobell v. Norton*, 391 F.3d 246, 257-58 (D.C. Cir. 2004) ("*Cobell XII*").

Trustee-Delegates therefore cannot evade accountability – as they have sought to do thus far in this litigation – by claiming that Ak-Chin has no right to engage in pre-trial discovery until after an "administrative record" has first been completed and reviewed. This identical contention has been flatly rejected by the Court as "ill-founded" and "unsound" in the *Cobell* trust litigation, in which individual Indian trust beneficiaries have similarly sought to enforce Trustee-Delegates' accounting obligations in the face of decades of mismanagement and neglect. *See Cobell v. Norton*, 226 F.R.D. 64, 92 (D.D.C. 2005).

Moreover, as this Court has now determined in denying Trustee-Delegates' remand-and-stay-request, "[t]hese cases, like *Cobell*, sound in traditional equity as well as in administrative law. . . ." (12/19/07 Mem. Order at 7.) Consequently, "it is the Court's obligation to define the trustee's legal duties and resolve the various charges raised in plaintiffs' complaints." *Id*. at 8-9. And, pre-trial discovery is absolutely critical as a

11

litigation tool that will "aid in the court's determination of such threshold questions of duty and breach." *Id.*

Ak-Chin submits that the case management order it proposed in this case eight months ago provides the proper foundation for further proceedings consistent with the Court's December 19 Memorandum Order. The elements of Ak-Chin's plan and Trustee-Delegates' APA-based opposition (a dispute which this Court has now effectively resolved in Ak-Chin's favor) are examined in the Sections below.

**B.    The Case Management and Discovery Plan Initially Proposed by Ak-Chin.**

During the meeting of counsel for the parties on April 11, 2007 (per Fed. R. Civ. P. 26(f) and Local Rule 16.3(c)), Ak-Chin presented a plan for the conduct of this litigation intended to resolve its equitable accounting claim in an orderly and timely fashion. This same case management plan – with minor modifications to accommodate government counsel's concerns – was later included in the Joint Report filed in this case on May 3, 2007. It was also outlined by counsel during the Status Conference on June 6, 2007. [Hearing Tr. at 12-15].

Ak-Chin's request for entry of such a Case Management Order ("CMO") was pending as of the Court's entry of the July 2 stay. With the lifting of that stay on December 19, this case management issue is now ripe for decision.

Pursuant to Ak-Chin's proposed CMO, along with the simultaneous and paramount proceedings outlined *supra* to obtain critical trust records, there is no reason not to also proceed on resolving the accounting claim. To accomplish this end, the litigation would be divided into two phases: (1) Declaratory Relief; and (2) Accounting Trial & Remedies.

<u>Phase I</u> ("Declaratory Relief") -- The initial phase is intended to address and resolve Ak-Chin's requests for declaratory relief set forth in Count One of the Complaint. (S*ee* Complaint at ¶¶ 32-39.)    The issues to be addressed in Phase I are to include:    (1) identification of the fiduciary duties applicable to this trust; (2) the nature and scope of Trustee-Delegates fiduciary duty to account;[6] and (3) whether they are in breach of this trust duty as claimed by Ak-Chin.    These are precisely the types of "threshold questions" the Court has now confirmed are to be addressed in this litigation.    (*See* 12/19/07 Memo Order at 9.)

The six-month period proposed for Phase I discovery (both factual and expert) under Ak-Chin's CMO would focus on such threshold issues of duty and breach.    And as a starting point, Trustee-Delegates would be required to produce all of the financial data and records referenced in their Answer and to identify any such materials that Trustee-Delegates contend satisfy their accounting obligation.

No later than 45 days after the conclusion of Phase I discovery, Ak-Chin would move for summary judgment.[7]    This motion would seek, among other things, a declaration setting forth certain duties applicable to this trust – including the fiduciary duty to account for all trust assets and that Trustee-Delegates had breached that duty.    In the event this Court

---

[6] As noted in Section IV below, since the CMO was initially prepared eight months ago, Trustee-Delegates have admitted that they owe such an accounting duty.    However, further questions remain for the Court to decide, including key determination with respect to the nature and scope of that fiduciary obligation.

[7] Per the proposed CMO, however, Ak-Chin would not be precluded from moving for relief regarding certain threshold issues (*e.g.*, the nature and scope of the accounting obligation owed by Trustee-Delegates) in advance of the completion of Phase I discovery.    Indeed, the resolution of such legal questions at an earlier stage could facilitate further Phase I proceedings by helping to frame other questions of law and fact and to identify the need for further discovery.

US2000 10572540.1

determined that issues of material fact remained regarding any Phase I issue, this Court would specially set a trial to resolve those factual issues.[8]

Phase II ("Accounting Trial & Remedies") -- Within 30 days of the Court's ruling on Phase I issues in favor of Ak-Chin, a further scheduling order would then issue governing Phase II proceedings. Although Ak-Chin submits that the details of this further order will not need to be determined until after Phase I, it is anticipated that the "Accounting Trial & Remedies" Phase would require an additional 12-month period to be completed (including additional factual and expert discovery). The Phase II "Accounting" trial would be scheduled at the end of this period, thereby allowing Trustee-Delegates ample time "for further agency consideration in harmony with the court's holding." (*See* 12/19/07 Memo Order at 9.) Phase II discovery in turn would be necessary to permit Ak-Chin to evaluate and test Trustee-Delegates' accounting methodology and the data on which it is premised, and to determine whether certain exceptions and objections to Trustee-Delegates' work product might be warranted.

At the Phase II trial, Trustee-Delegates would present their accounting of trust assets belonging to Ak-Chin in conformity with this Court's determination regarding the nature and scope of the accounting duty, and the Court then would hear Ak-Chin's exceptions and objections to the accounting. Following the Accounting Trial, the Court would determine whether Trustee-Delegates have complied with their declared trust duties. The propriety of any additional equitable relief would also be addressed at that time.

---

[8] The CMO that Ak-Chin initially submitted suggested May 2008 as the date for any Phase I trial that might be needed. Eight months have now passed, so that a change in the Phase I trial date and other changes are now necessary. Accordingly, Ak-Chin has substituted a "January 2009" date for any such specially set Phase I trial. *See* Updated CMO at ¶ 1(a). Additional modifications in the Updated CMO are addressed in Section IV below.

US2000 10572540.1

C.    **Defendants' APA-Based Objections.**

Without proposing any Case Management Plan of their own (aside from their request for the remand and stay the Court has now denied), Trustee-Delegates opposed key elements of Ak-Chin's CMO as unnecessary in an APA-review case [*see* 5/3/07 Joint Report at 11-13 and 18-20]. Most notably, Trustee-Delegates took issue with Ak-Chin's proposal that the Court address the threshold issues of trust duty and breach, urging instead that the litigation be stayed (or dismissed altogether) so as to allow Interior to "exercise its primary responsibility and discretion to define and complete the accounting for the Tribe, as Interior deems required . . . ." Joint Report at 11-12. Trustee-Delegates further objected across-the-board to the allowance of any of the pre-trial discovery called for under Ak-Chin's CMO, and requested that the Court "prohibit formal discovery in this case." Joint Report at 18.

Under Trustee-Delegates' contrary approach, Ak-Chin would effectively be put in the position of continuing to wait indefinitely for Interior to produce some version of a purported "accounting" without Ak-Chin's being allowed any meaningful opportunity to test the accuracy or reliability of Trustee-Delegates' accounting work product through discovery and appropriate review of Ak-Chin's own trust information – and without the benefit of the Court's review as to the sufficiency of Trustee-Delegates' efforts. This is a far cry from the type of accounting Ak-Chin is clearly entitled to receive under traditional equitable principles. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112 (1989) ("The extent of the duties . . . of a trustee is determined by the rules of law that are applicable to the situation; and not the rules that the trustee or his attorney believes to be applicable, and by the terms of the trust as the court may interpret them, and not as they may be interpreted by the trustee himself or by his attorney"); *Cobell VI*, 240 F.3d at 1103 (recognizing that "[t]he

15

trustee's report must contain sufficient information for the beneficiary readily to ascertain whether the trust has been faithfully carried out").

## IV.  FURTHER PROCEEDINGS NOW THAT THE JULY 2 STAY HAS BEEN LIFTED AND DEFENDANTS' THEORY THAT THIS IS MERELY AN AGENCY REVIEW CASE HAS BEEN REJECTED.

In denying Trustee-Delegates' remand-and-stay request on December 19, 2007, the Court laid to rest Trustee-Delegates' principal argument in opposition to Ak-Chin's CMO – *i.e.*, that this accounting action is nothing more than a typical APA review case.  As the Court has now made clear, "[t]hese cases, like *Cobell*,  sound in equity as well as in administrative law. . . ."  12/19/07 Mem. Order at 7.  And as such, the following principles govern further proceedings in these matters:

- First and foremost, "it is the court's obligation to define the trustee's legal duties and resolve the various charges raised in plaintiffs' complaints."  (12/19/07 Memo Order at 8-9.)  Indeed, the resolution of plaintiffs' claims for declaratory and injunctive relief "require analysis of trust and administrative law principles" that the Court (rather than agency officials) is particularly competent to provide.  (*See id*. at 9.)

- There is *no* legitimate reason to delay the Court's determination of "threshold questions of duty and breach" – particularly when the accounting plan Trustee-Delegates now claim to be committed to developing is "its response to trust-related concerns the department has been aware of for at least twenty years."  (*Id*. at 10.)  Indeed, in light of the recent admission by Trustee-Delegates that they have not even begun the accounting required by law (*see* 8/10/07 Remand Mo. at 22), it is appropriate to proceed forthwith in the manner outlined in the Updated CMO.

- Further, once Trustee-Delegates have been found by the Court to be in breach of their declared fiduciary duties, it may be "proper" to allow for "further agency consideration in harmony with the court's holding" before the litigation is concluded. (*Id*. at 9.)  But in the end, it is for the Court to determine whether Trustee-Delegates have fulfilled their fiduciary duties in accordance with the law, and whether appropriate steps have been taken to rectify any declared breaches of their trust duties. (*See id*. at 8-9.)

With the lifting of the July 2 stay, the Court can now proceed to address and decide "threshold questions" of Trustee-Delegates' duties and their breach.  The adoption of Ak-Chin's Updated CMO would allow this "next step" to be accomplished by the end of this calendar year.  Pursuant to the same CMO, Phase II "Accounting & Remedies" issues could then be presented and resolved by the end of 2009.  Ak-Chin therefore urges the Court to adopt the Updated CMO without further delay, and to address the other case management issues set forth below.

**A.      Plaintiff's Updated Case Management and Phase I Scheduling Order.**

The provisions of the Updated CMO (*see* Exhibit "1") are virtually unchanged from what Ak-Chin presented in the Joint Report filed with the Court eight months ago.

As before, the Updated CMO calls for bifurcated proceedings, thus permitting the Court to decide the threshold questions of trust duty and breach during the initial "Declaratory Relief" phase.  Deciding these key issues in this fashion will permit Trustee-Delegates the opportunity to take the Court's holdings into account as they proceed with

17

accounting-related activities during Phase II of the litigation.[9]  This in turn would be entirely consistent with the Court's December 19 articulation of principles governing further proceedings in the tribal trust cases.  (*See* 12/19/07 Memo Order at 7-10.)

As before, the Updated CMO also would require that as a first step in Phase I discovery, Trustee-Delegates produce all of the materials referenced in the Answer they filed in this case in March 2007.  This is made critically necessary because the current lack of clarity regarding Trustee-Delegates' position.  In response to allegations in the Complaint that Trustee-Delegates have breached their trust duty to account for Ak-Chin's trust funds and assets, Trustee-Delegates repeatedly made reference to "financial and accounting data and documentation," "statements of account" and other "trust account information" they claim to have furnished to Ak-Chin.  (*See* Answer at ¶¶ 2, 3, 5, 21, 30, 34, 36, 37 and 38.)  It is unclear from Trustee-Delegates' responsive pleadings, however, whether they actually intend to rely on any such materials as claimed satisfaction of the fiduciary duty that they allegedly owe.

Accordingly, the Updated CMO would require that Trustee-Delegates produce any and all such referenced materials within 30 days of the issuance of the Court's Order.  At the same time, Trustee-Delegates also would produce all work papers and other background source documents related thereto, and they would be required to specify at that same time which of the produced items (if any) they contend constitute a complete (or even partial),

---

[9]  This is not to say that Trustee-Delegates should not commence their accounting effort *immediately* (if they have not already done so), as there is plenty they can begin doing without the Court's guidance.  But as the December 19 Memorandum Order recognizes, the Court's guidance will also be essential to ensure that Trustee-Delegates fully comprehend the nature and scope of their fiduciary duties.

18

accurate and adequate accounting of all trust assets belonging to Ak-Chin as required by law. (*See* Updated CMO at ¶ 2(a).  )

Requiring such disclosures at the outset will facilitate Phase I discovery and help to frame the issues to be presented to the Court during the "Declaratory Relief" Phase.  Among the relief requested by Ak-Chin in Count One of its Complaint is a determination that the Arthur Andersen reports prepared by Defendants' contractors more than a decade ago do not constitute in any respect the complete, accurate and adequate accounting required under law. (*See* Complaint at ¶ 37.)   Depending on the position taken by Trustee-Delegates in complying with Paragraph 2(a) of the Updated CMO, it then may be possible to determine whether the Arthur Andersen reports (and other reports) present a Phase I issue necessitating further discovery and summary adjudication during Phase I.  Similarly, Trustee-Delegates' other responses per Paragraph 2(a) may help to significantly narrow and focus further Phase I proceedings.

In the Joint Report filed with this Court in May 2007, Trustee-Delegates took issue with this particular CMO provision – not on grounds that the information to be elicited was of no relevance but because in Trustee-Delegates' view such a disclosure could only properly be required vis-à-vis the service of written discovery requests for production and admissions pursuant to Federal Rules 34 and 36, respectively.  *See* Joint Report at 19.[10]

This is incorrect.  The Court clearly has the authority to direct that such disclosures be made pursuant to its broad case management authority.  *See, e.g.*, Fed. R. Civ. P. 16(c)(1) (empowering the Court to "take appropriate action with respect to the formulation and

---

[10] Trustee-Delegates effectively sought to avoid making any such disclosures whatsoever, inasmuch as the position taken elsewhere in the same Joint Report was that "the Court should prohibit formal discovery in this case."  (*See id*. at 18.)

US2000 10572540.1

simplification of the issues"); Rule 16(c)(6) and (c)(12) (authorizing "the control and scheduling discovery, including orders affecting disclosures . . .; as well as the adoption of "special procedures for managing potentially difficult or protracted actions"); **and** Fed. R. Civ. P. 16(c)(16) (recognizing the broad authority of the Court to address "such other matters as may facilitate the just, speedy and inexpensive disposition of the action"). Moreover, imposing such a disclosure requirement on Trustee-Delegates at the onset of Phase I discovery would serve to reduce the delay that will otherwise result if Ak-Chin is required to seek the very same information by means of written discovery. Given the extensive delay already created by the temporary stay Trustee-Delegates were granted on July 2 for the purpose of presenting their failed remand request, the Court should utilize its Rule 16 authority in this instance to move the case forward without needlessly compounding such delay.

With respect to the other provisions of the Updated CMO, there is one change of particular significance for the Phase I proceedings. The CMO submitted eight months ago indicated that among the questions to be addressed and resolved in Phase I would be whether Trustee-Delegates had a duty to account for Ak-Chin's trust assets. (*See* 5/3/07 proposed CMO at paragraph 1(a).) During the June 6 Status Conference, however, government counsel conceded that there was indeed such a duty (Hearing Tr. at 39).[11] And the motion for remand that Trustee-Delegates thereafter filed in this and the 36 other tribal trust cases tacitly acknowledged the existence of such a trust duty in requesting a six-month "time out" to allow Interior to develop a plan to satisfy such an obligation. (*See* 8/10/07 Remand Mo. at

---

[11] Indeed, Defendants' counsel described it as "the government's core position that *the Interior Department is committed to and will complete the accounting required by law*." (6/6/07 Hearing Tr. at 39 (emphasis added).)

US2000 10572540.1

22 (referring to the historical accounting plan Trustee-Delegates proposed to formulate as "[t]he first step in providing a full and complete accounting . . . .").)

Accordingly, Paragraph 1(a) of the Updated CMO has been amended to reflect that Defendants have now admitted that an accounting duty is owed.  Of course, while this threshold issue has been resolved, other key legal questions remain to be decided by the Court in the first phase of the litigation.  Among these are issues relating to the nature and scope of Trustee-Delegates' accounting obligation; and whether Defendants are in breach of the declared trust duties.  As the Court's December 19 decision recognizes, it is for the Court to address and resolve such "threshold questions" without further delay.  (*See* 12/19/07 Memo Order at 9.)

**B.    Trustee-Delegates' Refusal to Make the Initial Disclosure Required Per Rule 26(a)(1).**

As noted above, Trustee-Delegates have objected to serving any initial disclosures in this action on the ground that this action purportedly involves nothing more than the Court's "review on an administrative record."  *See* Fed. R. Civ. P. 26(a)(1)(E)(i) and Local Rule 16.3(b)(1).  Trustee-Delegates made this objection at the parties' Rule 26(f) conference and in the Joint Report filed with the Court eight months ago, thereby relieving both parties from the obligation of serving initial disclosures.  *See* Fed. R. Civ. P. 26(a)(1).  Under Fed. R. Civ. P. 26, it is now for the Court to "rul[e] on the objection and determine what disclosures, if any, are to be made, and set the time for disclosure."  *Id*.

The Court should overrule Trustee-Delegates' objection and direct the parties to serve initial disclosures within 30 days.  As the Advisory Committee note to Fed. R. Civ. P. 26(a)(1)(E)(i) exempting actions for review of an administration record explain, the

21

exemption of an action for review of an administrative record . . . is intended to reach a proceeding that is *framed as an 'appeal'* based solely on an administrative record." Fed. R. Civ. P. Rule 26(a)(1) Advisory Committees' Note (2000) (emphasis added); 6 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE ¶ 26.26[2] (3d ed. 1999).

It is for the plaintiff tribes, not Trustee-Delegates, to state the cause of action for which they seek relief. Ak-Chin's claim is not framed as an appeal but is *expressly pleaded* as an action under 28 U.S.C. § 1331 to enforce federal statutory trust responsibilities, both express and implied against Trustee-Delegates who owe substantial fiduciary duties to Ak-Chin. *See* Complaint at ¶ 9. As such, Ak-Chin's action for an equitable accounting of its trust assets including trust funds presents a federal question over which the Court clearly has subject-matter jurisdiction under Section 1331 – quite apart from the APA.

Nevertheless, Trustee-Delegates have ignored the contents of Ak-Chin's pleadings in this matter in attempting to characterize this case as an APA matter in which this Court's jurisdiction has been "invok[ed] . . . under the Administrative Procedure Act (APA), 5 U.S.C. §§ 500-706 . . . among other statutes." (*See* Joint Report at Section B.2._  This is not correct. The APA provision invoked by Ak-Chin as support for the breach of trust claim asserted under 28 U.S.C. § 1331 is Section 702 – which waives federal officials' sovereign immunity for actions (like this one) "seeking relief other than money damages" against federal officials' unlawful acts or omissions. 5 U.S.C. § 702. *See Schnapper v. Foley*, 667 F.2d 102, 108 (D.C. Cir. 1981) (holding that § 702 "was intended to eliminate the defense of sovereign immunity with respect to any action in a Court of the United States seeking relief other than money damages"). It is well settled that an APA waiver of sovereign immunity is *not* limited to APA claims, as "[t]he APA's waiver of sovereign immunity *applies to any suit*

22

*whether under the APA or not*."  *Chamber of Commerce v. Reich*, 74 F.3d 1322, 1328 (D.C.

Cir. 1996) (emphasis added).  *See also Cobell VI*, 240 F.3d at 1094 ("Insofar as plaintiffs

seek specific injunctive relief and declaratory relief – and, in particular, seek the accounting

to which they are entitled – the government has waived its sovereign immunity under the

provisions").

    As such, Federal Rule 26(a)(1)(E)(i) does not apply as this is not an APA

administrative review case.  The Parties should be ordered to serve all of the initial

disclosures in this case that are required under Rule 26(a)(1).  *See* Updated CMO at

Paragraph 2(b).

<h3 style="text-align:center">C.    Additional Case Management Issues.</h3>

    For the Updated CMO proposed by Ak-Chin to work effectively and without

encountering further delay, the following issues also should be addressed and decided at this

stage:

<h3 style="text-align:center">1.    *Lifting The Presumptive Limitations On Pre-Trial Discovery*
*(Interrogatories And Deposition Limits)*.</h3>

    It is Trustee-Delegates that have the information relating to trust management to

which tribal plaintiffs have far too long been denied access.  They also have a duty to furnish

trust data that exceeds the parameters of discovery per the Federal Rules of Civil Procedure.

All such limits were removed in 1996 in the *Cobell* litigation.  The same should happen here.

<h3 style="text-align:center">2.    *Addressing the Issue of Document Preservation.*</h3>

    Quite apart from Trustee-Delegates' obligation to preserve information and

documents relevant to the pending litigation, there is an even broader duty under trust law

principles for Trustee-Delegates to preserve records relating to trust administration.  *See,*

23

*e.g.*, *Pueblo of San Ildenfonso v. United States*, 35 Fed. Cl. 777, 788 (1996) ("It is well settled that a trustee such as defendant is under a duty to keep and render clear and accurate accounts with respect to administration of the trust").

Nevertheless, there are numerous examples of the government's mishandling of Indian trust records in cases pending before this Court and the Court of Federal Claims. This has included repeated and widespread destruction of documents in the *Cobell* litigation. *See, e.g., Cobell v. Norton*, 224 F.R.D. 1, 4 (D.D.C. 2004) (nothing the then-Special Master's filing of "dozens of reports documenting a myriad of disturbing (and undisputed) findings with respect to the lack of care with which trust information was being safeguarded"); *Cobell VI*, 240 F.3d at 1093 (nothing the "egregious" nature of destruction of documents and the government's failure to report that destruction to the Court in a timely manner); *Cobell v. Babbitt* ("*Cobell V*"), 91 F. Supp.2d 1, 60 (D.D.C. 1999) (acknowledging the Special Master's report regarding destruction and late notification to the court regarding 162 boxes of potentially relevant Treasury Department filings). *See also Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 138 (2004) (concluding that "the failures evidenced in *Cobell* appear to be so pervasive and systematic as to provide ample support for the issuance of a document preservation order in this case").

The preservation of such trust materials is an absolute essential prerequisite for this Court to ensure the integrity of these proceedings. Trust documents that Defendants appear to have had a penchant for destroying are the essential lifeblood of the trust – without which there is no accountability. Accordingly, now that the July 2 stay has been lifted, Ak-Chin anticipates moving for the entry of a document preservation order. (*See* Paragraph 5 of the Updated CMO directing that such a motion be filed within 30 days).

24

Ak-Chin further proposes that the Court consider whether such a preservation order should be entered in all 37 of the tribal trust cases currently pending before this Court. As this Court's recent consolidation of these cases for purposes of consideration of Defendants' remand request reflects, this Court clearly has the discretion under Fed. R. Civ. P. 42 to proceed in such a fashion. And adopting a single form of preservation order for all 37 cases would not only mitigate the risk of further loss of irreplaceable trust records in these matters, but also reduce the burden imposed on Trustee-Delegates with respect to compliance and enforcement of the order's terms.

The Updated CMO thus directs the parties to address the consolidation issue when briefing the document preservation issue in connection with Ak-Chin's to-be-filed motion. (*See* ¶ 5.)

**3. *Entering A Protective Order To Prevent Trustee-Delegates' Delays In The Production Of Trust Data*.**

To ensure that disclosures required per the CMO and Phase I discovery are not delayed over purported "confidentiality" concerns, Ak-Chin proposes that the parties be directed to confer immediately regarding the provisions of a proposed Protective Order to be entered in this case pursuant to Fed R. Civ. P. 26(c). Per Paragraph 5 of the Updated CMO, counsel would be required within 15 days of the entry of the CMO to advise the Court whether they have reached agreement with respect to the terms of such a Protective Order. With respect to any provisions where differences then remain, counsel are to submit memoranda addressing any such differences and proposing how they might be appropriately resolved without delaying the disclosures required under Paragraphs 2(a) and 2(b) of the Updated CMO.

25

In the action for money damages filed by Ak-Chin in the Court of Federal Claims (*Ak-Chin Indian Community v. United States,* No. 06-932L (Fed. Cl.), Judge Emily Hewitt imposed similar requirements and deadlines on counsel for the parties with respect to the negotiation of the form of protective order to be entered in that CFC case.  The approach was successful – counsel for the parties reported that they had reached an agreement with respect to all but two provisions of the form of protective order thereafter presented for the Court's consideration and entry.  And following a telephone conference on July 18, 2007, in which counsel addressed their differences and how to resolve them, a protective order was entered by the Court the very next day.

The Protective Order issued in the Ak-Chin CFC case is attached as Exhibit "4."  To facilitate discovery in this case, Ak-Chin is prepared to accept a similar form of protective order for use here.

## V.    <u>CONCLUSION</u>

For all of the foregoing reasons, Plaintiff-Beneficiary, The Ak-Chin Indian Community, respectfully requests the Court's adoption of the Revised Case Management and Phase I Scheduling Order submitted together with this Status Report.

Respectfully submitted,

/s/ Keith Harper
KEITH HARPER
D.C. Bar No. 451956
E-mail: kharper@kilpatrickstockton.com
G. WILLIAM AUSTIN
D.C. Bar No. 478417
E-mail: baustin@kilpatrickstockton.com
KILPATRICK STOCKTON LLP
607 14th Street, N.W.
Washington, D.C. 20005

Phone: (202) 508-5800

*Attorneys for Plaintiff*
The Ak-Chin Indian Community

January 18, 2008

US2000 10572540.1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE AK-CHIN INDIAN
COMMUNITY,

               Plaintiff,

v.

DIRK KEMPTHORNE, ROSS O.
SWIMMER and HENRY M.
PAULSON,

               Defendants.

)
)
)
)
)
)
)
)
)
)
)
)

Case No. 06-CV-02245-JR
Judge James Robertson
**(Electronically filed on January 18, 2008)**

## CERTIFICATE OF SERVICE

      I hereby certify that the foregoing PLAINTIFF'S STATUS REPORT was electronically filed using the Court's ECF system and that the below-listed counsel are ECF users and will be served via the ECF System:

               Laura M.L. Maroldy, Esq.
               Martin J. LaLonde, Esq.
               United States Department of Justice
               Environmental and Natural Resources Division
               Natural Resources Section
               P.O. Box 663
               Washington, D.C.  20044-0663

      This 18th day of January, 2008.

/s/ Keith Harper
KEITH HARPER
D.C. Bar No. 451956
E-mail: kharper@kilpatrickstockton.com
G. WILLIAM AUSTIN
D.C. Bar No. 478417
E-mail: baustin@kilpatrickstockton.com

KILPATRICK STOCKTON LLP
607 14th Street, N.W.
Washington, D.C. 20005
Phone: (202) 508-5800

*Attorneys for Plaintiff*
The Ak-Chin Indian Community

US2000 10572540.1

## EXHIBIT 1

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE AK-CHIN INDIAN COMMUNITY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-CV-02245-JR |
| | ) | Judge James Robertson |
| DIRK KEMPTHORNE, ROSS O. SWIMMER and HENRY M. PAULSON, | ) | **(Electronically filed on January 18, 2008)** |
| | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S REVISED PROPOSED CASE MANAGEMENT AND PHASE ONE SCHEDULING ORDER

Upon review of the information contained in the Parties' Joint Report Pursuant to Fed.R.Civ.P. 26(f) and Local Civil Rule 16.3, and the Status Report submitted by Plaintiffs in accordance with the Court's Memorandum Order dated December 19, 2007, the Court orders as follows:

1.     Bifurcation:  This action will be divided into two phases:  (1) Declaratory Relief; and (2) Accounting Trial & Remedies.

(a)     *Declaratory Relief* – Phase I will address and resolve Plaintiffs' requests for declaratory relief set forth in Count One of the Complaint.  *See* Complaint at ¶¶ 32-39.  In prior proceedings in this litigation, Defendants have admitted that they owe a duty to account with respect to the property held in trust for the benefit of the plaintiff tribes.  Nevertheless, a number of other issues remain to be addressed, including the Court's determinations regarding the nature and scope of Defendants' fiduciary duty to account and whether

Defendants are in breach of this trust duty. In addition, Plaintiff seeks the declaration of this Court that the Arthur Andersen report prepared by Defendants' contractors does not constitute in any respect the complete, accurate and adequate accounting required under federal law. *See* Complaint at ¶ 38. The parties must file dispositive motions no later than 45 days after the conclusion of Phase I discovery (*see* Paragraph 2(c)). In the event issues of material fact remain regarding Phase I issues, a pretrial conference will be held and a trial will be specially set to occur no later than January 2009.

(b)    *Accounting Trial & Remedies* - Should the Court rule in favor of Plaintiff on Phase I issues, within 30 days of such a ruling, the Court will issue a further scheduling order governing the Phase II proceedings. Although the details of the further order will not need to be determined until after Phase I, it is anticipated that the "Accounting Trial & Remedies" phase, which will also entail factual and expert discovery, would require an additional 12-month period to be completed. At the Accounting Trial, Defendants will present their proofs reflecting the steps taken to accomplish the court-declared duty to account. Plaintiff then will be permitted to except to Defendants' evidence and make any other appropriate objections including on admissibility. The Accounting Trial findings will serve as proper basis for the Court to determine whether the Plaintiff's account balances are accurately stated or need adjustment. The question of whether other equitable relief might be necessary also would be addressed in that same Trial.

2.    <u>Discovery</u>: In light of the nature of this action, the presumptive limits on written and oral discovery imposed by the Federal Rules do not apply.

(a)    *Required Disclosures* - In response to allegations in the Complaint that Defendants have breached their trust duty to account for Plaintiff's trust funds and assets,

2

Defendants make reference to "financial and accounting data and documentation," "statements of account" and other "trust account information" they claim to have furnished to Plaintiff. *See* Answer at ¶¶ 2, 3, 5, 21, 30, 34, 36, 37, 38. Defendants shall produce any and all such referenced materials within 30 days of this Order and specify at that same time which of the produced items (if any) Defendants contend constitutes a complete and accurate accounting of trust assets belonging to Plaintiff. Defendants shall include in this production all workpapers and other background source documents related thereto.

(b)    *Disclosures to be Made Per Rule 26(a)(1)* – The Court overrules Defendants' objection to serving other initial disclosures required under Rule 26(a)(1) of the Federal Rules of Civil Procedure. Contrary to what Defendants contend, this litigation is not exempted from such disclosures as a matter involving the Court's "review on an administrative record." The parties are therefore to make their respective Rule 26(a)(1) disclosures within 30 days of the Order.

(c)    *Phase I Discovery* - All Phase I fact discovery must be completed within 90 days of Defendants' required disclosures made pursuant to Paragraph 2 (a). Plaintiff must make its expert disclosures pursuant to Federal Rule 26(a)(2) by the close of Phase I fact discovery, and Defendants have 30 days from Plaintiff's disclosures within which to submit their expert disclosures pursuant to Federal Rule 26(a)(2)(B). The parties shall have an additional 30 days within which to complete the Phase I discovery concerning such disclosures, including the depositions of the parties' experts.

(d)    *Phase II Discovery* - As noted in Paragraph 1(b), a separate scheduling order will issue in the event of a ruling in Plaintiff's favor at the completion of Phase I. This later scheduling order will establish the dates for the parties' completion of any further discovery

3

related to Phase II issues. Deadlines for the disclosure of experts' reports, expert depositions, and the dates of the final pre-trial conference and the Accounting Trial also will be established at that time.

3.    <u>Dispositive Motions</u>:  All dispositive motions must be filed no later than 45 days of the conclusion of Phase I discovery. Parties will be given 30 days to respond to such motions, and the movant thereafter allowed 15 days in which to submit a reply.

4.    <u>Protective Order</u>:  The parties are directed to confer regarding the provisions of a proposed Protective Order to be entered in this case pursuant to FRCP 26(c) so as to facilitate Defendants' timely production of any assertedly confidential trust information. Within 15 days of the entry of this Order, counsel are to advise the Court whether they have reached agreement with respect to the terms of such a Protective Order. With respect to any provisions where differences remain, counsel are directed to submit memoranda addressing their differences and proposing how they might appropriately be resolved without delaying Defendants' disclosures required under Paragraphs 2(a) and 2(b) of this Order.

5.    <u>Document Preservation</u>:  Plaintiff proposes the entry of a single form of Document Preservation Order for use in this case and some or all of the other tribal trust cases pending before the Court. Plaintiff's motion requesting such relief is to be filed within 30 days of this order. Further, the parties' briefing of the document preservation issue shall also address the question whether the Court should exercise its discretion to consolidate all 37 of the pending tribal accounting claims for purposes of this issue.

6.    <u>Schedule for Production of Urgently Needed Trust Information</u>:  Plaintiff will serve on Trustee-Delegate and file with the Court by no later than March 1, 2008, a listing of information that is to be furnished by Trustee-Delegates. Trustee-Delegates will have 30

4

days from service to provide such material.  If Trustee-Delegates object to production of such material or need clarification, they must file an appropriate motion for protective order by no later than 15 days after service of Plaintiff's request.  If Trustee-Delegates fail to timely object or seek timely enlargement of time, they will thereafter waive their right to object and shall provide the information.

SO ORDERED this _____ day of _____, 2008.

_____
Hon. James Robertson
UNITED STATES DISTRICT JUDGE

US2000 10563766.1

**EXHIBIT 2**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Assiniboine & Sioux Tribes of the Fort Peck Indian Reservation v. Norton, et al. | : | Civil Action No. 02-0035 (JR) |
| Standing Rock Sioux Tribe v. Norton, et al. | : : | Civil Action No. 02-0040 (JR) |
| Three Affiliated Tribes of the Fort Berthold Reservation v. Norton, et al. | : : : | Civil Action No. 02-0253 (JR) |
| Shoshone-Bannock Tribes of The Fort Hall Reservation v. Norton, et al. | : : : | Civil Action No. 02-0254 (JR) |
| Chippewa Cree Tribe of the Rocky Boy's Reservation v. Norton, et al. | : : : | Civil Action No. 02-0276 (JR) |
| Yankton Sioux Tribe v. Norton, et al. | : : | Civil Action No. 03-1603 (JR) |
| Osage Tribe of Indians of Oklahoma v. USA, et al. | : : | Civil Action No. 04-0283 (JR) |
| Crow Creek Sioux Tribe v. Kempthorne, et al. | : : | Civil Action No. 04-0900 (JR) |
| Omaha Tribe of Nebraska v. Kempthorne, et al. | : : | Civil Action No. 04-0901 (JR) |
| Oglala Sioux Tribe v. Kempthorne, et al. | : : | Civil Action No. 04-1126 (JR) |
| The Confederated Tribes of the Colville Reservation v. Norton, et al. | : : : | Civil Action No. 05-2471 (JR) |
| Wyandot Nation of Kansas v. Kempthorne, et al. | : : | Civil Action No. 05-2491 (JR) |
| Rosebud Sioux Tribe v. Kempthorne, et al. | : : | Civil Action No. 05-2492 (JR) |

| | | |
|---|---|---|
| Winnebago Tribe of Nebraska<br>v. Kempthorne, et al. | :<br>: | Civil Action No. 05-2493 (JR) |
| Lower Brule Sioux Tribe v.<br>Kempthorne, et al. | :<br>: | Civil Action No. 05-2495 (JR) |
| Prairie Band of Potawatomi<br>Nation v. Kempthorne, et al. | :<br>: | Civil Action  No. 05-2496 (JR) |
| Te-Moak Tribe of Western<br>Shoshone Indians v.<br>Norton, et al. | :<br>:<br>: | Civil Action No. 05-2500 (JR) |
| Cheyenne River Sioux Tribe v.<br>Kempthorne, et al. | :<br>: | Civil Action No. 06-1897 (JR) |
| Stillaguamish Tribe of<br>Indians v. Kempthorne, et al. | :<br>: | Civil Action No. 06-1898 (JR) |
| Iowa Tribe of Kansas and<br>Nebraska v. Kempthorne, et al. | :<br>: | Civil Action No. 06-1899 (JR) |
| Confederated Tribes of the<br>Goshute Reservation v.<br>Kempthorne, et al. | :<br>:<br>: | Civil Action No. 06-1902 (JR) |
| Muskogee (Creek) Nation of<br>Oklahoma v. Kempthorne, et al. | :<br>: | Civil Action No. 06-2161 (JR) |
| Eastern Shawnee Tribe of<br>Oklahoma v. Kempthorne, et al. | :<br>: | Civil Action No. 06-2162 (JR) |
| Northwestern Band of Shoshone<br>v. Kempthorne, et al. | :<br>: | Civil Action No. 06-2163 (JR) |
| Red Cliff Bank of Lake<br>Superior Indians v.<br>Kempthorne, et al. | :<br>:<br>: | Civil Action No. 06-2164 (JR) |
| Pechanga Band of Luiseno<br>Mission Indians v.<br>Kempthorne, et al. | :<br>:<br>: | Civil Action No. 06-2206 (JR) |
| Colorado River Indian Tribes<br>v. Kempthorne, et al. | :<br>: | Civil Action No. 06-2212 (JR) |

2

US2000 10392002.1

| | | |
|---|---|---|
| Tohono O'odham Nation v.<br>Kempthorne, et al. | : <br> : | Civil Action No. 06-2236 (JR) |
| Nez Perce Tribe, et al. v.<br>Kempthorne, et al. | : <br> : | Civil Action No. 06-2239 (JR) |
| Passamaquoddy Tribe of<br>Maine v. Kempthorne, et al. | : <br> : | Civil Action No. 06-2240 (JR) |
| Salt River Pima-Maricopa<br>Indian Community v.<br>Kempthorne, et al. | : <br> : <br> : | Civil Action No. 06-2241 (JR) |
| Coer D'Alene Tribe v.<br>Kempthorne, et al. | : <br> : | Civil Action No. 06-2242 (JR) |
| Ak-Chin Indian Community v.<br>Kempthorne, et al. | : <br> : | Civil Action No. 06-2245 (JR) |
| Sokaogon Chippewa Community<br>v. Kempthorne, et al. | : <br> : | Civil Action No. 06-2247 (JR) |
| Gila River Indian Community<br>v. Kempthorne, et al. | : <br> : | Civil Action No. 06-2249 (JR) |
| Northern Cheyenne Tribe of<br>Indians v. Kempthorne, et al. | : <br> : | Civil Action No. 06-2250 (JR) |
| Haudenosaunee: The Onondaga<br>Nation v. Kempthorne, et al. | : <br> : | Civil Action No. 06-2254 (JR) |

## DECLARATION OF DELIA CARLYLE

I, Delia Carlyle, the undersigned, hereby declare:

1.     My name is Delia Carlyle. I am over the age of 21, competent to testify and have personal knowledge of the matters stated herein.

2.     I am a member and Chairman of the Ak-Chin Indian Community ("Ak-Chin Community"), one of the plaintiffs in the above-captioned case. I was Chairman of the Ak-Chin Community from 1988-1993 and have been Chairman or Vice Chairman of the Ak-Chin

3

Community since 2001. My responsibilities as Chairman and Vice Chairman include presiding over the Community Council and representing the Ak-Chin Community in its dealings with the local, state and federal government.

3.    The Ak-Chin Community is located approximately 35 miles south of Phoenix, Arizona adjacent to the town of Maricopa, Arizona, one of the fastest growing suburbs of Phoenix. The Ak-Chin Community, a small tribe with 767 enrolled members, once inhabited a small, rural farming village.

4.    Today, like many Phoenix suburbs, the Ak-Chin Community is being significantly impacted by unprecedented hyper-growth in its area. By way of example, in the year 2000, there were approximately 1,000 people in the adjacent town of Maricopa. In 2004, the town had grown to over 5,000 people and one year later, the population swelled to approximately 18,000. The town of Maricopa projects that in a just a few years its population will exceed 100,000 people.

5.    This explosive growth has brought problems to the Ak-Chin Community, such as an increase in traffic, congestion and other effects of rapid urban expansion. Because of the hyper-growth in the area, roadway infrastructure, in particular, is a major problem for the Ak-Chin Community and its neighbors.

6.    Trustee-Delegates hold all relevant information regarding roadways, rights-of-way and easements crossing the Ak-Chin Community's reservation which has been directly impacted by hyper-growth.

7.    The Ak-Chin Community has made many good faith attempts to retrieve documentation from Trustee-Delegates regarding certain rights-of-way and easements, but to no avail.

4

8.    Trustee-Delegates' failure to produce critical documents to the Ak-Chin Community makes it impossible for the Ak-Chin Community to effectively protect its rights or negotiate with local developers, and the State and local governments regarding road expansion and other developments affecting its reservation.

9.    While Trustee-Delegates' failure to produce information to the Ak-Chin Community regarding its trust assets is not a new problem for the Ak-Chin Community -- indeed, for decades, the Ak-Chin Community has had difficulty obtaining trust records from Trustee-Delegates -- because of the recent hyper-growth it in its area, obtaining this information is now a top priority.

10.    On December 29, 2006, the Ak-Chin Community initiated an action for an accounting of its trust funds and to enforce the duty that Trustee-Delegates provide all information regarding the management and administration of the Ak-Chin Community's trust assets, such as rights-of-way and easements affecting the Ak-Chin Community's reservation.

11.    Because Trustee-Delegates agreed to produce some information to the Ak-Chin Community on an informal basis, on June 14, 2007, the Ak-Chin Community's counsel provided Trustee-Delegates' counsel with a listing of four roads and a pipeline and identified three narrow categories of supporting documentation that it required as a top-priority.  (A true and accurate copy of that listing is attached hereto as Exhibit A.)

12.    On August 14, 2007, Trustee-Delegates provided the Ak-Chin Community with a redacted title status report and promised to provide documents relating to June 14, 2007 request at a later date.  (A true and accurate copy of that letter is attached as Exhibit B.)  The Ak-Chin Community still has not received this promised information from Trustee-Delegates.

5

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _32_ day of October, 2007.

Debbi Carlyle

EXHIBIT A

## Munson, Catherine

| | |
|---|---|
| **From:** | Munson, Catherine |
| **Sent:** | Thursday, June 14, 2007 4:27 PM |
| **To:** | 'Maroldy, Laura (ENRD)' |
| **Cc:** | Harper, Keith; Austin, Bill |
| **Subject:** | Ak-Chin Indian Community |

Laura,

Thank you for speaking with us today regarding Defendant's collection of documents and information for the Ak-Chin Indian Community. In light of Defendant's stated willingness to provide Ak-Chin information on an informal basis, Ak-Chin researched and prioritized the specific documents it needs at this time regarding its reservation.

These documents are as follows:

1. Documents which serve as legal instruments for the grant of any and all Rights-of-Way and Easements from Ak-Chin to any other entity including but not limited to BIA or ADOT;

2. All documents related to the BIA approval of any Rights-of-Way and Easements, to the extent applicable; and

3. Documents which serve as legal instruments for the grant of any and all Rights-of-Way and Easements from any entity other than Ak-Chin.

Ak-Chin seeks the above categories of documents (1-3) relating to the below roads (A-D), in order of priority:

A. Maricopa - Casa Grande Highway (Highway 238)
B. Peters & Nall Road
C. Maricopa Highway 347 (north-south)
D. Farrell Road (east-west)

4. All documents related to the El Paso Gas Line Right-of-Way.

It is Ak-Chin's position that these documents are not confidential or otherwise protected from disclosure. As such, there is no reason for Defendant to delay production of these documents until the parties agree upon a Consent Protective Order. Please do not hesitate to contact me with any questions regarding these records.
We appreciate your anticipated cooperation in this matter.
Best regards,
Catherine

10/22/2007



**KILPATRICK
STOCKTON** LLP

Attorneys at Law

Catherine F. Munson
Kilpatrick Stockton LLP
Suite 900
607 14th Street, NW
Washington, DC 20005-2018
t 202 824-1435
f 202 585 0017
**\*admitted in Georgia only**
Confidentiality Notice:
This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This transmission, and any attachments, may contain confidential attorney-client privileged information and attorney work product. If you are not the intended recipient, any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. Please contact us immediately by return e-mail or at 404 815 6500, and destroy the original transmission and its attachments without reading or saving in any manner.

10/22/2007

**EXHIBIT B**

U.S. Department of Justice

Environment and Natural Resources Division

90-2-20-12078

Natural Resources Section
P.O. Box 663
Washington, DC 20044-0663

Telephone (202) 514-4565
Facsimile (202) 353-2021

August 14, 2007

**BY FEDERAL EXPRESS: OVERNIGHT DELIVERY**

Keith Harper, Esq.
William Austin, Esq.
Catherine Munson, Esq.
Kilpatrick Stockton LLP
607 14th Street 11th Floor
Washington, D.C.  20005-2018

     Re:    *Ak-Chin Indian Community v. United States,*
            *No. 06-932L (U.S. Court of Federal Claims)*

Dear Counsel:

     We have enclosed two compact diskettes containing documents requested by Plaintiff:

     1.     one bearing the number T-612-010-V001; and

     2.     one bearing the label "AAMODS."

     The first CD described above contains redacted copies of supporting documentation relating to the title status report ("TSR") for the Ak-Chin Indian Community.   We are sending these copies along pending the generation of an unredacted set, bearing "confidential" markings in accordance with the Protective Order entered by the Court.

     My understanding is that an additional increment of documents that includes documents relating to the four roads and the gas pipeline identified in Ms. Munson's June 14, 2007, e-mail to us is currently being "imaged."  We will send those documents on to you after the imaging process and confidentiality review are complete.

     The second enclosed CD ("AAMODS") contains an unredacted copy of the "issue papers" that were produced to you in redacted form with the United States' initial disclosures in this case.  (This item was item #2 in Mr. Austin's July 26, 2007, e-mail to me.)

               Sincerely,

               Laura Maroldy

Encls.
cc: Martin J. LaLonde
    Tony Hoang

Keith Harper, Esquire
William Austin, Esquire
Catherine Munson, Esquire
August 14, 2007
Page 2

bcc: Elisabeth Brandon, Esquire
Rachel Howard, Esquire
(both by electronic mail or facsimile only; w/o enclosures).

- 2 -

**Munson, Catherine**                    **EXHIBIT 3**

| | |
|---|---|
| **From:** | Austin, Bill |
| **Sent:** | Monday, August 06, 2007 10:14 AM |
| **To:** | Austin, Bill; 'Maroldy, Laura (ENRD)'; 'LaLonde, Martin (ENRD)' |
| **Cc:** | Harper, Keith; Munson, Catherine |
| **Subject:** | RE: The Ak-Chin Indian Community v. United States (Court of Federal Claims)(Case No. 06-932L) |

Laura:

Since a week has passed without any response to my July 30 e-mail, I thought I'd better follow up with you.

When can we expect to receive documents responsive to Ak-Chin's requests informally conveyed on June 14, 2007? We're now more than seven weeks beyond the date that our client asked for these "priority" items. And nearly four months have passed since Keith Harper emphasized Ak-Chin's pressing need for such information at the initial meeting of counsel on April 11, 2007 in conjunction with the equitable accounting litigation in the district court.

You'd indicated in your July 27 e-mail that a call with Interior was to take place this past Monday in which the "second batch" of responsive materials (see Category One in my e-mail below) and a number of other items referenced in defendant's initial disclosures as relevant to this case were to be discussed (see, for example, Categories Seven and Eight below).

Where do these matters now stand?

Please advise at your earliest convenience regarding these subjects and other other issues raised in my July 30 e-mail.

Thanks.

Bill Austin

Attorney for Plaintiff

## Munson, Catherine

| | |
|---|---|
| **From:** | Austin, Bill |
| **Sent:** | Monday, July 30, 2007 1:57 PM |
| **To:** | 'Maroldy, Laura (ENRD)'; LaLonde, Martin (ENRD) |
| **Cc:** | Harper, Keith; Munson, Catherine |
| **Subject:** | RE: The Ak-Chin Indian Community v. United States (Court of Federal Claims)(Case No. 06-932L) |

Laura:

Thank you for your e-mail dated July 27, 2007. I have a few follow-up questions/comments:

Category One of the Documents Inquired About in my July 26 E-Mail--I understand from your response that a reason for the hold-up in providing us with the materials informally requested on June 14, 2007 is that Interior's earlier review of these items for confidentiality resulted in the creation of redacted copies (rather than the complete versions of responsive documents we're now entitled to receive per the Protective order entered in Ak-Chin on July 19).

While we are anxious to receive the requested materials in unredacted form (and understand from your July 27 e-mail we will be receiving the "first wave" of responsive items shortly), we ask that the redacted copies also be produced to us while we're waiting for the complete documents to be provided. Given the nature of the requested materials, we're confident these are items which directly relate to our client's trust administration and that Ak-Chin will desire to retain even after the litigation is concluded.

With respect to the "second batch" of items our client has identified as priority materials, you've indicated you expect to learn more about where the processing of this group of documents stands after a call with Interior today. Specifically, and as set forth in my July 26 e-mail, please let us know when the remainder of the items requested six weeks ago will be provided, and to which categories of Catherine Munson's June 14 letter these materials correspond. Moreover, if (as with the first wave of requested materials) Interior has generated redacted versions of these items, please convey them to us while we're waiting for the complete/unredacted documents to be supplied.

Category Two of the Documents Inquired About in my July 26 E-Mail--I understand from your response that the preparation of "unredacted" versions of the issue papers is underway. When can we expect to receive such items?

Category Four of the Documents Inquired About in my July 26 E-Mail--I understand from your response that if we wait for a confidentiality review to be completed of the high-level inventories of Arthur Andersen's work papers and related materials, it may take additional time for these materials to be provided. Hence, your July 27 proposal that the inventories be produced as "Confidential Material" without completing the review beforehand (in which event, your Friday e-mail indicated the inventories would be available to us "within a few days from today").

If we choose instead to await the production of these items after they've been reviewed for confidentiality (so that only those documents actually containing confidential information are designated as such for protective order protection), when would the production be accomplished? What is the quantity of the material to be reviewed in this fashion? As you know, we'd prefer where possible to avoid conferring the "confidentiality" designation on materials that don't properly warrant such protection owing to their contents.

Category Six of the Documents Inquired About in my July 26 E-Mail--I assume the government's response with respect to Account Statements, etc. located at the Pima Agency will be supplemented following your trip to the Agency on August 9.

Categories Seven and Eight of the Documents Inquired About in my July 26 E-Mail--I understand you've set up a call with Interior to discuss these items. We look forward to your further response.

Category Nine of the Documents Inquired About in my July 26 E-Mail--Am I correct in understanding from your e-mail that all of the Land-Based documents identified in the government's initial disclosures served on June 4 (including the Title Status report and supporting documents referenced in section B.2 (xv) of the disclosures) are among the materials that are being compiled in response to Catherine Munson's June 14 request? As indicated in my July 26 e-mail, we're interested in arranging for all such responsive material to be promptly provided.

Bill Austin

---

**From:** Maroldy, Laura (ENRD) [mailto:Laura.Maroldy@usdoj.gov]
**Sent:** Friday, July 27, 2007 8:00 PM
**To:** Austin, Bill; LaLonde, Martin (ENRD)
**Cc:** Harper, Keith; Munson, Catherine
**Subject:** RE: The Ak-Chin Indian Community v. United States (Court of Federal Claims)(Case No. 06-932L)

Bill:

This message responds to items numbered 2, 3, 4, 5, 6, and 9, in your message to us, below. We have set up a call with Interior on Monday regarding the other items.

In the meantime, to respond generally regarding item 1 of your letter, we know Plaintiff is eager to get the documents referred to in Ms. Munson's e-mail from several weeks ago; and I am aware I told Catherine (and you) at our June 27 meeting that we expected to be able to produce the first set of documents Interior had received from the field in about four weeks from that date. I expected at that time that we would be able to do so. Interior conducted a page-by-page review, and documents were redacted by Interior because no confidentiality agreement was in place; now they are in the process of generating an un-redacted version. We expect that our review of those documents, which follows Interior's, will take less time than Interior's, and although we did not receive the documents this Monday as I'd expected, I don't think we will be very far off the four weeks I projected on June 27.

Regarding item 2 of your e-mail, "unredacted" copies of the issue papers are being generated for Plaintiff.   That work began earlier today.

Regarding the BISS (item 3 in your e-mail), we intended section 2 b (ii) of the disclosures to describe the BISS; we did not mean to suggest that we had generated from the BISS inventories specifically for the Ak-Chin, or that inventories would be provided in hard-copy form. Instead, it is your access to the BISS and the results of your research on the BISS that could not be provided absent a confidentiality production order. (I can see why that was not clear from the wording of that portion of the disclosure.) We would arrange to make access to the BISS (in Lenexa, KS or Albuquerque) available to you for your research.

Regarding the inventories referred to in Section B.2.(iv) of Defendant's initial disclosures (item 4 in your e-mail): We can get the inventories to you within a few days from today if Plaintiff agrees that we can produce them all as "Confidential Material" under the protective order. Otherwise, we would have to review them page-by-page for confidential material and that will take more time. Please let us know how you want to proceed regarding those inventories.

All of the materials we referred to in Section B.2 (v) of Defendant's initial disclosures (item 5 of your e-mail) were produced to Plaintiff on the CDs we sent under cover of our June 5, 2007, letter following-up the initial disclosure document.

Regarding the materials we referred to in Section B.2 (vii) of the initial disclosures that may be located at the Pima Agency (item 6 of your e-mail), we've scheduled a trip to the Agency for August 9. Depending on the volume and nature of the materials there, we may produce those materials by making them available for Plaintiff's inspection.

As to item 9 of your e-mail, the items referred to in Section B.2 (xv) of the initial disclosures are the same as the materials you refer to in item 1 of your e-mail. There are not, as you surmise in your e-mail, "other realty documents that have been identified as responsive and compiled for production in this case." As I noted above, we expect to learn more about where the processing of the second grouping of documents stands, after Monday's call with Interior. I understand it is a much larger group than the first increment. Although, as I believe we noted in the June 27 meeting, Interior transmitted Catherine Munson's list of priorities to the field agencies, Interior receives documents from the field in batches corresponding to how the documents are maintained by the agency/ies and do not necessarily match up neatly with the priorities Catherine outlined in her e-mail; however, I will do my best to let you know to which of those category/ies the second batch of documents appears to correspond

    Regards,

    Laura Maroldy

---

**From:** Austin, Bill [mailto:BAustin@KilpatrickStockton.com]
**Sent:** Thursday, July 26, 2007 5:23 PM
**To:** Maroldy, Laura (ENRD); LaLonde, Martin (ENRD)
**Cc:** Harper, Keith; Munson, Catherine
**Subject:** FW: The Ak-Chin Indian Community v. United States (Court of Federal Claims)(Case No. 06-932L)


    Laura:

    With the Court's entry on July 19 of a protective order governing defendant's designation and production of assertedly confidential information, I wanted to follow up with you regarding each of the following items:

    1. The documents you've agreed to produce in response to our client's informal production requests conveyed on June 14, 2007.

    As Catherine Munson indicated in her e-mail of five weeks ago conveying plaintiff's informal requests, the four numbered categories of items identified for production consist of documents which Ak-Chin has determined to be a top priority.

When Catherine and I met with you, Elizabeth Brandon and Martin LaLonde at DOJ on June 27, we were advised that the "first wave" of materials responsive to the Community's informal requests had been compiled and that these items were being reviewed "page by page" for confidentiality for production to take place in "three or four weeks."

Your July 20 e-mail seemed to suggest, however, that the review of the "first increment" of responsive materials for confidentiality might not even have begun as of this past Friday. And there was no indication in your e-mail as to which of the documents specifically identified for production on June 14 would be included in th e initial group, or when our client might expect to receive the balance of the requested items.

We therefore ask that you let us know at your earliest convenience --category by category--which of the materials we'd requested on June 14 are to be produced as part of defendant's "first increment" of responsive items and the date on which this production will take place.

So too, please advise as to which documents are to be included in the "second batch" of responsive materials referenced in your July 20 e-mail, and the date by which those items will be provided.

We'd appreciated the government's stated willingness to produce such materials without insisting on the receipt of formal discovery requests, but thought it was clear from our discussions of this subject dating back to the first meeting of counsel for the parties on April 10, 2007 that the government's timely production of the requested items was critical from our client's perspective.

With the protective order now in place, we trust that any remaining impediments to getting the production accomplished have been removed. If that is not the case, please let us know immediately.

2. The "issue papers" identified in defendant's initial disclosures served on June 4, 2007.

As you know, redacted copies of the "issue papers" generated in connection with the tribal trust reconciliation project were produced to us six weeks ago because a protective order was not then in place. Now that the PO has been entered, please provide us with the "unredacted" versions referenced in the June 4 disclosures in Section B.1 (at page 4).

We assume this further disclosure will be made promptly (i.e., within the next 10 days). If for any reason that is not going to be the case , please let us know when the unredacted versions will be provided and the reason(s) for the delay.

3. The Box Index Search System ("BISS") materials referenced in defendant's initial disclosures in Section B.2 (ii) (at pages 8-9).

According to the government's June 4 disclosures, the Office of Trust Records has been creating an index of materials stored in boxes designated by defendant as "inactive records." However, the BISS inventories were not produced six weeks ago due to asserted confidentiality concerns. Specifically, defendant stated on June 4 that these inventories "cannot be produced until the Court has entered a protective order to protect the confidential information."

Since the condition for the BISS inventories' disclosure has now been met, please provide us with any such inventories listing records relating to the Ak-Chin Indian Community's trust funds or trust assets. Here too, we would expect defendant to be able to produce such items promptly (i.e., within 10 days). Let us know immediately if that is not going to be the case.

4. The Work papers and related documents referenced in defendant's initial disclosures in Section B.2 (iv) (at page 9).

According to the government's June 4 disclosure, there are "high level" inventories prepared by Arthur Andersen of its collection of work papers related to the tribal trust reconciliation project, as

well as separate inventories prepared by OHTA based on its reviews, searches and selected imaging of the collected Andersen work papers.

Like the other items listed above, however (see nos. 2 and 3), the inventories of work papers and related documents were withheld from disclosure six weeks ago because they assertedly contained Privacy Act or other third-party information deemed to be confidential.

We ask that these items also be promptly produced now that the July 19 protective order safe-guarding such assertedly confidential materials is in place.

5. The Reports prepared by Chavarria, Dunn and Laney LLP referenced in defendant's initial disclosures in Section B.2 (v) (at pages 9-10).

According to the June 4 disclosures , Interior contracted with this accounting firm to perform "certain agreed upon procedures" for disbursement transactions intended to supplement the reconciliation results Interior distributed in 1996. The disclosures go on to state that this additional work included "a limited number of disbursement transactions concerning the Plaintiff...."

Insofar as any documents (confidential or otherwise) reflecting the Chavarria firm's activities pertaining to our client have not already been produced, we ask that they be provided. The June 4 submission represented that this particular disclosure (along with a number of others) would be "supplemented " and we request all additional items responsive to category B.2 (v) therefore be provided.

6. Account Statements, etc. located at the Pima Agency and referenced in defendant's initial disclosures in Section B.2 (vii) (at page 10).

The June 4 submission stated that as of six weeks ago, the government had not yet reviewed "the collection of potentially relevant documents believed to be located at the [Pima] Agency," but that defendant planned to do so "in the near future."

To the extent that the promised review has now been accomplished, we ask that the government's disclosure be supplemented. And if the "potentially relevant" documents believed to be located at the Agency have not yet been reviewed, please advise as to when the promised review will be accomplished and when plaintiff can expect such materials to be provided.

7. The MoneyMax Reports (and predecessor system investment reports) referenced in defendant's initial disclosures in Section B.2 (ix)( at page 10).

The June 4 submission indicated that OHTA has been imaging and coding MoneyMax and predecessor system investment reports. The disclosure of such reports was withheld six weeks ago, however, because a protective order was not yet in place.

Now that the July 19  PO has issued, any concern with respect to the confidential nature of the information contained in these documents has been resolved. The MoneyMax and predecessor system investment reports should be provided without further delay.

8. The General Ledger Control cards referenced in defendant's initial disclosures in Section B.2 (x) ( at page 11).

According to the June 4 disclosures, 1200 boxes of trust records had been identified as "potentially responsive to the Plaintiff's Claims," and the results of defendant's search  have been compiled in an "Excel spreadsheet format."

Due to confidentiality concerns, however, the disclosures  went on to state six weeks ago that "Defendant cannot produce this spreadsheet unless and until an appropriate protective order is approved by the Court."

As with the other assertedly confidential materials referenced in the June 4 submission, the issuance of the protective order by Judge Hewitt one week ago clears the way for the prompt production of the Excel spreadsheet. Let us know immediately if for any reason you disagree with this.

9. The Land-Use Documents referenced in defendant's initial disclosures in section B.2 (xv) (at pages 12-13).

According to the June 4 submission, the process of gathering and reviewing such documents for the Ak-Chin Indian Community had begun , including the compilation of a " Title Status report... and supporting documents."

So too, the electronic imaging of such materials for production purposes was "already underway." And we were advised six weeks ago that "Defendant will produce the imaged documents to Plaintiff after a confidentiality agreement is in place; and expects to produce additional documents...on a rolling basis as and after they are identified, gathered and imaged."

With the protective order now in place, we assume the government will be proceeding with the production process spelled out in the June 4 disclosures. Insofar as the priority items we've informally requested on behalf of Ak-Chin fall within this category, we ask that they be produced first and on an expedited basis (indeed, we assume this is how you intend to proceed, given your July 20 e-mail comment that the "first increment" will be sent "as soon as we can").

However, it's also clear from the June 4 disclosures that in addition to the limited number of priority items we requested after defendant's initial disclosures had been prepared and served, there are a number of other "realty documents" that have been identified as responsive and compiled for production in this case. We therefore ask that the production of these items also proceed (as outlined in defendants' June 4 submission) now that the protective order is in effect in this case.

Thanks in advance for your anticipated cooperation in this matter. Don't hesitate to contact us with any questions.

Bill Austin

Attorney for Plaintiff

***DISCLAIMER*** Treasury Department Circular 230 Disclosure: To ensure compliance with requirements imposed by the Treasury Department, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein...

EXHIBIT 4

# In the United States Court of Federal Claims

No. 06-932 L

(E-Filed: July 19, 2007)

|  |  |
|---|---|
| AK-CHIN INDIAN COMMUNITY, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| THE UNITED STATES, | ) |
|  | ) |
| Defendant. | ) |
|  | ) |

PROTECTIVE ORDER

      The parties requested the court to enter a protective order and provided a proposed form of order on July 13, 2007. Based on the parties' proposed form of the order and further to discussions held telephonically on July 18, 2007, the court GRANTS the parties' motion to the extent consistent with the following and ORDERS as follows:

1.     All materials and information provided by defendant to plaintiff or its representatives in response to pre-trial discovery, the court's production orders or the initial disclosures required by Rules of the Court of Federal Claims (RCFC) 26(a)(1) in this action (Produced Material) shall be subject to the terms of this Protective Order.

2.     Any Produced Material which contains Confidential Information, as described in the second and third sentences of this paragraph 2, shall be marked by defendant with the endorsement "CONFIDENTIAL MATERIALS--DO NOT DISCLOSE." Produced Material will be so designated if it contains trade secret, confidential, proprietary or commercially sensitive information within the scope of RCFC 26(c)(7). Confidential Information entitled to protection under this Protective Order shall include, but is not limited to, information protected by the Privacy Act, 5 U.S.C. § 552a; "privileged proprietary information" as defined by 25 U.S.C. § 2103(c) enacted as part of the Indian Mineral Development Act of 1982; information concerning the nature and location of archeological resources within

the meaning of 16 U.S.C. § 470hh of the Archeological Resources Protection Act of 1979; information about the location, character or ownership of historical sites within the meaning of 16 U.S.C. § 470w-3(a) of the Natural Historic Preservation Act of 1966; information which concerns or relates to trade secrets or confidential statistical or financial data within the meaning of 18 U.S.C. § 1905; and other confidential, proprietary or commercially sensitive information, including but not limited to financial information of Individual Indians or other Tribes, within the scope of RCFC 26(c)(7). The same endorsement shall be placed on any document or other record prepared on behalf of plaintiff that incorporates Confidential Information derived from any Produced Material designated by defendant as "CONFIDENTIAL MATERIALS--DO NOT DISCLOSE." Produced Material that contains solely plaintiff's trade secrets, confidential statistical or financial information, or other confidential information will not be designated by defendant as Confidential Information and, except as provided in paragraph 4 below, is not subject to this Protective Order.

3.     Any documents, data or other materials that defendant identifies as potentially containing Confidential Information and that defendant makes available to plaintiff or its representatives for inspection shall be treated as if it were Confidential Information and no copies of any such material shall be made during inspection. If images or copies of such inspected materials are thereafter requested by and provided to plaintiff, only those images or copies containing Confidential Information shall be marked by defendant as "CONFIDENTIAL MATERIALS--DO NOT DISCLOSE" and be subject to the provisions of this Protective Order.

4.     Plaintiff and defendant may agree to forego defendant's review to determine the confidentiality of the Produced Material, in which case defendant shall endorse "CONFIDENTIAL MATERIALS—DO NOT DISCLOSE" on all of the documents, data, and other materials before providing them to plaintiff. The documents, data, and other materials endorsed in this manner shall be deemed Confidential Information and protected as such under this Protective Order. If plaintiff intends to file documents, data, or other materials that have been endorsed as Confidential Materials with the court as evidence or for any other purpose, it shall follow the procedures set forth in this Protective Order. Alternatively, plaintiff may request that defendant review the endorsed documents, data, or other materials to determine if they contain Confidential Information, redact the Confidential Information, and produce a version of the documents, data, or other materials, after the necessary redactions, for filing with the court without the "CONFIDENTIAL MATERIALS—DO NOT DISCLOSE" endorsement. If

2

plaintiff wishes to use for any other purposes documents, data, or other materials
that have been endorsed as Confidential Materials, plaintiff may request that
defendant review those documents and produce a version of the documents, data or
other materials without the Confidential Materials endorsement. Such documents,
data, or other materials, after either being redacted or determined not to contain
Confidential Information, shall no longer be considered Confidential Materials and
subject to this Protective Order.

5.    Confidential Materials shall be used by plaintiff's counsel and its consultants and
experts (including but not limited to accountants) only for purposes of this
litigation, or as otherwise hereafter may be agreed to by the parties (provided that
no such agreement shall permit disclosure in violation of law or the rights of third
parties) or approved by the court. Plaintiff, plaintiff's counsel, consultants and
experts may disclose or make available Confidential Materials only to their
employees who are currently engaged in work specifically related to this litigation
and only to the extent that those employees need such Confidential Materials in
order to carry out that work. Before any Confidential Materials shall be disclosed
by or on behalf of plaintiff to any person, plaintiff's counsel shall advise the
person of the terms of this Protective Order, the person shall be provided with a
copy of this Protective Order, the person shall personally review the terms of this
Protective Order and shall execute a document containing the following
acknowledgment:

> I understand that I am being given access to Confidential Materials
> containing Confidential Information within the terms of a Protective Order,
> in Ak-Chin Indian Community v. United States, No. 06-932L, (Fed. Cl. July
> 19, 2007), a copy of which has been provided to me. I have read the
> Protective Order and agree to be bound by its terms.

The executed acknowledgments shall be maintained by plaintiff's attorney of
record. Counsel for the parties shall be deemed to have executed the foregoing
acknowledgment. The court, court personnel and court reporters shall have access
to Confidential Materials without further action. Counsel for the parties shall
advise court reporters at depositions of the applicable terms of this Protective
Order.

6.    If plaintiff disputes defendant's assertion and designation that Produced Material
contains Confidential Information, plaintiff shall notify defendant in writing and
state the grounds for disputing defendant's assertion and designation of

3

Confidential Materials. Within 21 days of defendant's receipt of plaintiff's written notification, the parties shall discuss and attempt to resolve the dispute. If the parties do not resolve the dispute within 21 days (unless extended by agreement), the parties, by turns, beginning with plaintiff, shall promptly (that is, within seven days unless otherwise agreed or ordered by the court), file a motion to seek a ruling from the court regarding defendant's assertion and designation of Confidential Materials.

7.  Confidential Materials shall be filed under seal by the Clerk of the Court if such materials are filed into the court record as evidence or exhibits or for any other purpose. The parties shall not file with the court at any time any pretrial motion, brief, pleading, or other filing in this case, quoting or paraphrasing Confidential Materials or containing Confidential Information obtained from Confidential Materials, unless the portion of the motion, brief, pleading, or other filing is filed under seal with the Clerk of the Court. All materials filed under seal shall be filed in accordance with General Order No. 42A of the Court of Federal Claims, Nov. 4, 2004, and other court rules, policies, and orders applicable at the time of filing. If Confidential Materials or Confidential Information shall be discussed at any deposition, defendant shall, upon receipt of the transcript of such deposition, promptly designate the pages containing that information and those pages shall be marked with the "CONFIDENTIAL MATERIALS – DO NOT DISCLOSE" endorsement .

8.  All individuals to whom Confidential Materials are disclosed shall return to counsel for defendant or destroy all Confidential Materials in their possession immediately upon the termination of this litigation (including the resolution of any applicable appeals) or the termination of any related administrative proceedings before the Department of the Interior, whichever occurs later. In furtherance of the foregoing, plaintiff's counsel shall provide defendant's counsel with copies of the acknowledgments executed pursuant to paragraph 5. If an individual or entity to whom Confidential Materials are disclosed ceases to serve as plaintiff's legal representative, the individual or entity shall immediately return to counsel for plaintiff all Confidential Materials then in his or her or its possession. Individuals or entities returning or destroying Confidential Materials shall provide to defendant's counsel certification in writing that the Confidential Materials have been returned or destroyed. Compliance with the terms of this paragraph 8 is not intended to result in plaintiff being unable to retain copies of documents to the extent that such documents contain information about plaintiff or plaintiff's assets or information about the performance by defendant of its trust responsibilities to

4

plaintiff (collectively plaintiff's documents). The parties shall cooperate, using the procedures for redaction described in paragraph 4 or other procedures agreed to by the parties or ordered by the court, so that plaintiff may, at the termination of this litigation, retain copies of plaintiff's documents.

9.    This Protective Order shall remain in full force and effect after the termination of this litigation.

IT IS SO ORDERED.

s/ Emily C. Hewitt
EMILY C. HEWITT
Judge

5