IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE AK-CHIN INDIAN COMMUNITY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-CV-02245-JR |
| | ) | Judge James Robertson |
| DIRK KEMPTHORNE, ROSS O. | ) | **(Electronically filed on September 5, 2008)** |
| SWIMMER and HENRY M. PAULSON, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF TRUST RECORDS

### I.    INTRODUCTION

For decades, Plaintiff the Ak-Chin Indian Community has had difficulty obtaining its trust records from its trustee, the Defendants. Because of recent hyper-growth development in and around its reservation, however, Ak-Chin desire has transformed into a desperate need to obtain its trust records to evaluate its legal rights vis-à-vis third parties. As this Court is well aware, obtaining this information is a top priority for Ak-Chin because it is the only way it can protect itself from encroachment. For that reason, Ak-Chin has been working informally with Defendants to obtain its trust records through this action for the past 17 months. While in more recent days some trust records have trickled in, Defendants still have not produced many of the trust records which Ak-Chin identified as its most pressing priorities over one year ago – records that Defendants are required by law to receive and maintain as fiduciaries responsible for approving and issuing rights-of-way involving tribal lands. *See, e.g.,* 25 C.F.R. § 169 (2008) (originally enacted as 25 C.F.R. § 161 (1965 Cum. Sup.–1981) and amended on Dec. 27, 1968 at 33 FED. REG. 19803)).

US2000 11015895.1

In addition, Defendants have, over the course of engaging in informal discovery, steadfastly refused to confirm whether their failure to produce Ak-Chin's requested trust records is the result of their failure to maintain those records. Defendants' failure to produce Ak-Chin's trust records and their refusal to confirm whether these documents exist and are in their possession has prejudiced Ak-Chin in its dealings with third-parties and necessitated Ak-Chin seeking this Court's intervention.

At a February 25, 2008 Status Conference addressing Ak-Chin's urgent need for its trust records, this Court ordered that the parties continue to work together informally, but at the same time cautioned that if Defendants continued to fail to produce the requested information informally, a formal process requiring Defendants to produce records – unless they objected within 15 days – would be imposed upon the parties. On August 5, 2008, Ak-Chin triggered this formal process by providing Defendants with a listing of 15 priority requests for trust records. On August 25, 2008, Defendants responded by asserting two legally deficient general objections and promising to file a motion for protective order at a future date detailing additional, supplemental objections.

Because the Court clearly required that Defendants assert their objections within 15 days, Defendants have waived their right to assert additional objections. Moreover, neither of the objections asserted by Defendants justifies their failure to produce the requested records within 30 days as the Court directed.

Accordingly, pursuant to Fed. R. Civ. P. 37, Ak-Chin hereby moves this Court for an order (1) declaring any objections to Ak-Chin's requests not asserted in Defendants' August 25th filing are waived; (2) overruling Defendant's August 25th objections; (3) ordering Defendants to produce the documents that are responsive to the Ak-Chin's requests to within 15 days of the

US2000 11015895.1

entry of the order at Kilpatrick Stockton LLP's offices; and (4) awarding attorneys fees and costs incurred in obtaining this relief.

## II.    BACKGROUND

The explosive growth of Maricopa County and the impact this hyper-growth has had on the areas in and around Ak-Chin's reservation has been well documented in filings before this Court. (*See, e.g.*, Plaintiff's Status Report [Dkt. # 27].)  Ak-Chin has, prior to filing this lawsuit, diligently and in good faith sought its trust records regarding certain easements and rights of way from Defendants, without success. (*See* Ex. 2 to Plaintiff's Status Report [Dkt. #27] ("Carlyle Decl.") at ¶ 7.)  Defendants do not seriously quarrel with this record.

And the results of Defendants' recalcitrance in producing critical trust records is equally clear – they have rendered the cetui – Ak- Chin – vulnerable because Ak-Chin cannot effectively protect its rights or negotiate with local developers, the State of Arizona or counties and municipalities regarding road expansion and other development affecting its reservation.  (*Id.* at ¶ 8.)  Against this backdrop, to fully appreciate the necessity for the Court's intervention, Ak-Chin's good faith efforts since April 2007 to retrieve its trust records through the informal process urged by this Court are detailed below.

> **A.    Ak-Chin's efforts to obtain its trust records, beginning in April 2007, and the events leading to the February 25th Status Conference demonstrate the failure of the informal discovery process and the need for this Court's intervention.**

During the first meeting of the parties' counsel in this action, on April 11, 2007, Defendants took the position that Ak-Chin was not entitled to discovery in this case, contending that Ak-Chin's case involves nothing more than the Court's "review on an administrative record."  *See* Fed. R. Civ. P. 26(a)(1)(E) and Local Rule 16.3(b)(1); Joint Report Pursuant to Fed. R. Civ. P. 26(f) and LCvR 16.3 [Dkt. # 11], at 3-5.  Defendants also withheld Initial

US2000 11015895.1

Disclosures on those same grounds.  After Ak-Chin's counsel informed Defendants' counsel of the critical nature of Ak-Chin's request for information regarding Ak-Chin's trust assets in light of the impact of hyper-growth in its area, Defendants' counsel agreed to produce information to Ak-Chin on an "informal" basis.

At a subsequent meeting on April 27, 2007, Defendants' counsel represented that they had already begun to collect the type of information identified by Ak-Chin's counsel during the April 11th meeting, and also represented that such information would be provided in June or July, 2007.  On June 14, 2007, after not having received any responsive information despite Defendants' counsel's representation to Ak-Chin and this Court that they were "in the process of copying and imaging and reviewing" responsive documents to Ak-Chin's request (*see* Tr. of June 6, 2007 Status Conference, 44:22-45:01; 47:14-18), Ak-Chin provided Defendants' counsel with a listing of four roads, a pipeline and identified categories of supporting documentation that it required as a top-priority.  (Carlyle Decl. at ¶11 and Ex. A thereto.)

Still nothing.  Not until August 14, 2007 did that Trustee-Delegates provided Ak-Chin with a single  document – a redacted Title Status Report – the most basic of basic information which Ak-Chin did not request – accompanied by a promise to provide documents relating to the June 14th request at a later date.  (*See* Exhibit 3 to Plaintiff's Status Report [Dkt. #27]; Carlyle Decl. at ¶12 and Ex. B thereto.)  Defendants' counsel specifically promised an "additional increment of documents" responsive to Ak-Chin's June 14th request – those that represent the most pressing need for purposes of ongoing development in and around Ak-Chin's reservation – and explained that they were simply being "imaged" and would be submitted pending confidentiality review.  (*Id.* at ¶12 and Ex. B thereto.)

US2000 11015895.1

After having been unsuccessful in obtaining the trust records it sought and to ensure that Ak-Chin would obtain its critical trust records in the possession of Defendants up to that point – ten months since the initial meeting of counsel in April 2007 – in its January 18, 2008 Status Report [Dkt. # 27] Ak-Chin requested that the Court issue an order setting a schedule for Ak-Chin to serve on the Defendants, and file with the Court, a listing of trust records that the government would furnish. Pursuant to this schedule, the government would have 30 days from service of Ak-Chin's request to provide the trust records. If the government objected to production of such material or needed clarification, it would be required to file an appropriate motion for protective order by no later than 15 days after service of Ak-Chin's request. If the government failed to object timely or seek enlargement of time, it would thereafter waive its right to object and provide the requested information. (Plaintiff's Status Report, at 9-10 [Dkt # 27].)

**B.      At the February 25th Status Conference, the Court adopted the process proposed by Ak-Chin in its January 18, 2008 Status Report.**

After Ak-Chin submitted its Status Report to the Court, the Court scheduled a status conference to address Ak-Chin's "urgent need[]" for trust records that was not being addressed by Defendants, ascertain the kind of information Ak-Chin needs and determine why "it isn't getting it from the government." (Tr. of Feb. 25, 2008 Status Conference at 3-4.) Ak-Chin explained why it so desperately needs trust records regarding its Reservation, including information relevant to rights-of-way and easements and recounted its efforts to obtain this information informally from the government.

After hearing argument from both parties, the Court ruled, as Defendants readily concede, that in the event that Defendants did not produce the requested documents informally, then Ak-Chin's proposed discovery schedule would be imposed on the parties. (*See* Tr. of

US2000 11015895.1

February 25, 2008 Status Conference at 24-25).  Specifically, the Court ruled that "plaintiff may submit a list of urgently needed information to the trustee" and "if [the Court] doesn't get an objection from the trustee within 15 days, then the documents are going to have to be turned over within 30."  (Tr. of February 25, 2008 Status Conference at 24.)

     C.    **Despite Ak-Chin's efforts to work informally to obtain its trust records, Defendants still have not produced the requested trust records.**

During the months following the Status Conference, Ak-Chin worked with the Defendants' counsel, who was now more responsive to Ak-Chin's requests, on an informal basis to obtain its trust records.  For that reason, in March, the parties sought a two-week extension of the March 12, 2008 deadline.  To obviate the need for the parties to seek ongoing extensions of the original March 12th deadline, during a March 25, 2008 teleconference with the Court, the parties  jointly requested that they be permitted to file monthly Status Reports with the Court.  In agreeing to extend this informal process, it was understood that if Ak-Chin did not obtain the documents it seeks, then the schedule which the Court approved at the Status Conference would be imposed upon the parties.  The parties filed monthly Status Reports in April and every month since that time.

Ak-Chin worked diligently to obtain the documents it needs on an informal basis. Nonetheless, critical trust records were still not produced, especially regarding rights-of-way that Ak-Chin identified as top priorities.  The government failed to produce these records even after Ak-Chin specifically identified which documents continue to be missing in an April 22, 2008 letter to the government's counsel.  (*See* Exhibit A to Plaintiff's July Status Report [Dkt. # 63].)

Because Ak-Chin desperately needs these records, Ak-Chin sought a commitment from Defendants to produce the missing records by a date certain.  Rather than committing to produce the missing records, however, Defendants produced to Ak-Chin's counsel the results of a search

for Ak-Chin's records of the Box Index Search System (BISS) at the American Indian Records Repository (AIRR) in Lenexa, Kansas. (*See* Plaintiff's Notice of Filing Request for Production Pursuant to this Court's February 25, 2008 Order [Dkt. # 66].) According to the BISS report, there are in excess of 6,400 boxes of records at AIRR which may contain records responsive to Ak-Chin's requests. The government, Ak-Chin's trustee, further revealed that it has no intention of producing the records, *i.e.*, search through their record system and produce responsive trust records to Ak-Chin. (*See, e.g.,* Defendants' Status Report Regarding Production of Certain Documents at 4 [Dkt. #40]; Defendants' Status Report Regarding Their Responses to Plaintiff's Request for Certain Documents at 3 [Dkt. # 64].) Instead, the Defendants intend for the *cestui* and its lawyers to travel to AIRR and sift through at least 6,400 boxes of various records. By the government's own estimate, each box contains an average of 2,000 pages for a total of 12,800,000 pages of material. Put another way, the trustee, by its own careless action, has combined Ak-Chins' records with all kinds of other records and failed to keep adequate indices to easily find the critical trust records Ak-Chin needs and so wants to place on Ak-Chin the responsibility to review more than 13 million pages of records to find what it needs.

Because time is of the essence and Defendants have abdicated their fiduciary obligations by attempting to shift the burden and expense of searching for Ak-Chin's trust records, Ak-Chin had no choice but to revert to the procedure approved by this Court at the February 25th status conference. The situation on the ground has gotten graver still and the vulnerable states in which Ak-Chin remains becomes more palpable every day. In an effort to finally get the records needed, Ak-Chin served on the government a listing of trust records that the government must

furnish on August 5, 2008.[1]  (*See* Plaintiff's Request for Production Trust Records Pursuant to the Court's February 28, 2008 Order [Dkt. # 67].)

Defendants filed their "objection" to Plaintiff's requests for production on August 25, 2008, asserting that they are entitled to 30 days from the date of service of Plaintiff's Amended Request for Production and objecting to Ak-Chin's requests on two general bases: first, that discovery is limited to the administrative record pursuant to the Administrative Procedures Act, and second that discovery is precluded pending this Court's determination of Defendants' Motion to Dismiss [Dkt. ## 51, 52].  Defendants did not file a motion for protective order with their August 25th filing but promised to file this motion, along with additional objections, "no later than September 4, 2008."[2]  (*See* Defendants' Objection to Plaintiff's Request for Production [Dkt. # 68].)

## III.    ARGUMENT

### A. Defendants have waived their right to assert additional objections to Ak-Chin's formal requests.

The Court made plain when it addressed Defendants' counsel at the February 25th Status Conference that Defendants could either produce the requested records within 30 days or object within 15 days of production.  Defendants suggest in their August 25th filing, however, that they may assert additional objections when they file their motion for protective order after the 15-day deadline.  Because Defendants failed to assert these additional objections within the 15 day deadline, they are waived.

---

[1] Plaintiff served amended requests on August 6, 2008 includes an exhibit that was inadvertently omitted from the August 5th requests.

[2] Defendants' counsel informed Plaintiff's counsel that they intended to file a motion for a protective order on September 4, 2008.  *See* 8/29/08 email from B. Austin to K. Regan, attached as Ex. A (memorializing LCvR 7(m) conference).

US2000 11015895.1

The Court's February 25th order clearly limited the period in which a response was required.  Through this order, the Court properly exercised its discretion over discovery matters to limit the time within which Defendants could respond under the rules.  *See* Fed. R. Civ. P. 34(b)(2)(A) (permitting court to shorten or lengthen time for responding to requests for production); *Burlington Ins. Co. v. Okie Dokie, Inc.*, 368 F.Supp.2d 83, 86 (D.D.C. 2005) (trial court exercises "considerable discretion over discovery matters") (citing *United States v. Krizek*, 192 F.3d 1024, 1029 (D.C. Cir. 1999)).  Defendants have waived their right to assert additional objections based on the simple, yet undeniable, basis that they failed to comply with this Court's process.  *See, e.g., Carey-Canada, Inc. v. California Union Ins.*, 118 F.R.D. 242, 249 (D.D.C. 1986) (failure to assert objection based on privilege within time limits constituted waiver of such objection); *Myrdal v. Dist. of Columbia*, 2007 WL 1655875, No. 05-02351, at *3 (D.D.C. June 7, 2007) (holding that defendant waived its right to object to plaintiff's document production requests because it failed to timely file those objections) (citing *Fonville v. Dist. of Columbia*, 230 F.R.D. 38, 42 (D.D.C 2005)).

In short, Defendants concede, as they must, that this court limited the time to object to 15 days.  They failed to object in 15 days and failed to timely seek an enlargement.  This Court plainly has authority to change the default time periods set forth in the Federal Rules and has done so here.  Accordingly, Defendants have waived any objection not raised by August 25th.

**B.  Neither of Defendants' "objections" justify their failure to produce Ak-Chin's requested records in 30 days as directed by this Court.**

The objections that Defendants asserted in their August 25th filing do not justify their failure to produce the requested records within 30 days.  Defendants only asserted two general

US2000 11015895.1

objections, both of which are legally deficient.[3]  Defendants first object to producing Ak-Chin's trust records by claiming that Ak-Chin has no right to engage in pre-trial discovery until after an "administrative record" has first been completed and reviewed.  This Court has already considered and rejected this precise argument – namely, that Ak-Chin is only entitled to the administrative record – when, during the February 25th Status Conference, the Court ordered that Ak-Chin be permitted to serve formal requests on Defendants for its trust records.

Moreover, this identical contention has been flatly rejected by the Court as "ill-founded" and "unsound" in the *Cobell* trust litigation, in which individual Indian trust beneficiaries have similarly sought to enforce Defendants' accounting obligations in the face of decades of mismanagement and neglect.  *See Cobell v. Norton*, 226 F.R.D. 67, 92 (D.D.C. 2005).  Consequently, "it is the Court's obligation to define the trustee's legal duties and resolve the various charges raised in plaintiffs' complaints."  *Assiniboine & Sioux Tribes of the Fort Peck Indian Reservation v. Norton*, 527 F.Supp.2d 130, 135 (D.D.C. 2007).

What is more, this is a trust case.  As a fiduciary, the government is under a strict duty to provide the information requested by its beneficiary and, even without request, to ensure that the beneficiary has whatever "material facts affecting the interest of the beneficiary which the trustee knows the beneficiary does not know and which the beneficiary needs to know for his protection in dealing with a third person which respect to his interest."  RESTATEMENT (SECOND) OF TRUSTS, comment d, § 173.  *See Clifford v. U.S.*, 136 F.3d 144, 152 (D.C. Cir. 1998) (A trust beneficiary is entitled to receive "any information necessary to protect his rights under the

---

[3] It was improper for Defendants to only assert general objections to Ak-Chin's requests.  Under the federal rules, Defendants were obligated to state, with respect to each item listed in Ak-Chin's request for production, the reasons for their objections.  *See* Fed. R. Civ. P. 34(b)(2)(B); LCvR 26.2(d).  *See, e.g., D.L. v. District of Columbia*, No. 05-1437, 2008 WL 2555101, at *2 (D.D.C. Jun. 27, 2008) ("A party objecting to a document request must include the reasons for the objection" and if no reason as to specific document request is stated, the court will overrule the objections) (internal citations omitted)).

US2000 11015895.1

trust"). Defendants have not once, in the entire year and a half saga relating to these critical records, challenged the idea that these are trust records Ak-Chin desperately needs. They well know that these are records Ak-Chin needs and yet they hide behind every possible legal barrier to delay producing them. All the while knowing the consequences Ak-Chin faces are dire if it does not receive these records.

Defendants' second objection is that "this Court should resolve Defendants' challenge to the jurisdictional basis of Plaintiffs' complaint before any attempts to take discovery are allowed to go forward." (Defendants' Objection to Plaintiff's Request for Production at 3 [Dkt. # 68].) This objection fails because this Court – well aware that Defendants intended to file a motion to dismiss for lack of jurisdiction – already ruled on February 25th that the government must follow a procedure pursuant to which Ak-Chin will obtain its trust records. The Court made this ruling after the government expressed its intent in two separate status reports to file a dispositive motion for lack of jurisdiction. (Parties' 5/4/07 Joint Status Report [Dkt. #12] & Defendants' 3/3/08 Revised Status Report [Dkt. #33].) In fact, this Court specifically acknowledged that the government questioned the Court's jurisdiction at the February 25th status conference. (*See also* Tr. of February 25, 2008 Status Conference at 25) (the Court: "Now, we can all argue about jurisdiction and which court it is, and what section of CFR it comes under and how long the appeal process takes, and take it to the Court of Appeals, but come on. Let's just pull the information out and give it to [Ak-Chin] informally, please").) (*See id*. at 3) (The Court, stating "We want to file a motion to dismiss" as one of the government's reasons for failing to provide Ak-Chin's records).)

Moreover, the government has not moved to stay the procedure ordered by this Court, which they have had ample opportunity to do since February, and this Court has not issued an

11

order that would stay this process. To the contrary, at the hearing on the Motion to Dismiss, this Court inquired as to the progress of the government's document production – clearly an indication that the Court did not view the government's motion to dismiss as having any affect on its obligation to produce trust records. *See* Tr. of July 24, 2008 Hearing on Defendants' Mot. to Dismiss at 22 ("Where does the Ak-Chin records matter stand, by the way?"). (*See also* Defendants' Status Report Regarding Their Responses to Plaintiff's Request for Certain Documents at 1 [Dkt. # 64].)

> **C.     Ak-Chin is entitled to a court order requiring that responsive materials be produced at Kilpatrick Stockton LLP's offices in accordance with its August 5th request.**

Because Defendants failed to timely object in their August 25th filing to Ak-Chin's request for the production of responsive trust records at the offices of Kilpatrick Stockton LLP, Defendants have waived this objection and cannot later insist that Ak-Chin travel to AIRR to search for its trust records. *See Fonville v. Dist. of Columbia*, 230 F.R.D. 38, 42 (D.D.C. 2005) (although Rule 34 does not have automatic waiver provision for failure to timely object to document production requests, courts have interpreted failure to state objections constitutes a waiver); *Peskoff v. Faber*, 244 F.R.D. 54, 64 (D.D.C. 2007) (citing *Fonville* and applying the rule). Even in the absence of a waiver, Defendants may not avail themselves of the "usual course of business" method of production by requiring Ak-Chin to search for records at AIRR because storage of responsive documents in storage facilities, warehouses or other document depositories does not pass muster under Fed. R. Civ. P. 34(b)(2)(E).

Rule 34 sometimes permits a responding party to produce responsive documents for inspection by the requesting party either as they are kept in the "usual course of business" or by organizing and labeling them according to the requests. *See, e.g., Tequila Centinela, S.A. de*

*C.V. v. Bacardi & Co. Ltd.*, No. 04-02201, 2007 WL 1876388, at *2 (D.D.C. Jun. 28, 2007) (stating rule). It is Defendants' position that the documents stored at AIRR are kept in the "usual course of business." (*See* Defendants' Status Report Regarding Production of Certain Documents at 3 [Dkt. # 49].) This is plainly erroneous. Courts have admonished that documents produced from storage facilities should be analyzed "with caution." *Breunlin v. Village of Oak Park*, 2008 WL 2787473, No. 07-C-4627, at *4 (N.D. Ill. July 17, 2008) ("[O]nce documents not used with regularity are sent to a storage facility . . . then it is no longer essential that they be kept with any degree of organization") (internal citations omitted)). This is for a very practical reason – "once documents not used with regularity are sent to a storage facility . . . then it is not longer essential that they be kept with any degree of organization . . . ." *Id*. (internal citations omitted). Thus, parties who maintain responsive documents in storage facilities do not qualify for the "usual course of business" option at all, and are *limited* to responding by organizing and labeling as the alternative "organize and label" method of production. *See In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D 351, 362-63 (N.D. Ill. 2005) ("Storing documents may be a part of the usual course of business, but stored documents are not kept in the usual course of business within the meaning of the rule . . . documents in storage [are] no longer kept in the "usual course of *business*, they are kept in the usual course of *storage*"). *See also* 8A Wright, Miller & Marcus, FEDERAL PRACTICE & PROCEDURE § 2213 (2d ed. 2008).

Moreover, allowing Defendants to satisfy their production obligation by giving Ak-Chin a BISS index and proposing that it "go fish" among thousands of potentially responsive (and non-responsive) documents – as they attempted to do during the informal discovery process – is a clear violation of Rule 34's requirement that a responding party specify "[f]or each item or category [of request]" either its response or its objection. Fed.R.Civ.P 34(b)(2)(B). *See*

*Convertino v. U.S. Dept. of Justice*, 2008 WL 2640288, No. 04-0236, at * 2 (D.D.C. July 7, 2008) (citing the rule and noting that "general objections", or objections that do not include the reasons for the objection, fail to satisfy federal rule)).  But a graver violation is Defendants' refusal to produce Ak-Chin's trust records without resorting to a process that shifts the burden of production on their own beneficiary to its detriment.  In other words, requiring Ak-Chin look through more than 6,000 boxes (or even 1,000 if that were the case) of documents that may have few (if any) of the trust records its so urgently needs falls far short of satisfying Defendants' obligations as fiduciaries.

> **D.      Attorneys fees and costs are warranted in view of Defendants' violation of this Court's order, their meritless objections to Plaintiff's requests, and pattern of disregard for its duty under the federal rules and trust law.**

Federal Rule 37 allows a party to move to compel production of discovery requests and, if successful, the movant may seek costs, including attorneys fees, from the non-moving party. *See* Fed. R. Civ. P. 37(a).  It also provides that payment of the moving party's costs is mandated unless the nonmoving party can demonstrate that its failure was "substantially justified" or "other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(A)(ii)-(iii). *See D.L.*, 2008 WL 2555101, at * 10 (citing *Cobell v. Norton*, 226 F.R.D. 67, 90 (D.D.C. 2005)). Defendants cannot demonstrate that their August 25th filing is either substantially justified that imposition of costs in this instance would be anything but just.

"The Supreme Court has noted that a party meets the 'substantially justified' standard when there is a 'genuine dispute or if reasonable people could differ' as to the appropriateness of the motion."  *Alexander v. FBI*, 186 F.R.D. 144, 147 (D.D.C. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).  Defendants cannot satisfy their burden here.  First, "objections" to Ak-Chin's request for 15 categories trust records have been waived for

US2000 11015895.1

Defendants' failure to adhere to the February 25th order. And Defendants' objections are based on legal propositions that have been considered and rejected previously by this Court. *See* Section B, *supra*. There is therefore no reason to believe that these baseless objections are reasonable or "substantially justified" – let alone a basis upon which "reasonable people could differ." *See Tequila Centinela, S.A. de C.V. v. Bacardi & Co. Ltd.*, 2007 WL 1876388, No. 04-02201, at *4-5 (D.D.C. June 28, 2007) (defendant unable to provide substantial justification for its discovery failures, including withholding disclosure, failing to produce relevant documents and failing to comply with the requirements of Rule 34); *D.L.*, 2008 WL 2555101, at *11 (finding that "reasonable people could not differ as to the appropriateness of the bulk of plaintiff's motion" because defendant demonstrated, *inter alia*, a "pattern of tardy and piecemeal disclosure"). *See also* Fed. R. Civ. P 37 Advisory Committee note (rule amended to <u>require</u> that expenses be paid to the prevailing party unless the losing party's failure to respond to document production requests is substantially justified, and to "encourage judges to be more alert to abuses occurring in the discovery process)). What is more, if Defendants had fully complied with the February 25th order, Ak-Chin would not have been forced to incur legal fees for compelling Defendants to abide by the order. *See Tequila Centinela,* 2007 WL 1876388, at *5.

Second, the award of attorneys fees would not be unjust. Imposition of attorneys fees and costs, along with the other relief requested in the instant case, is "just and proportionate" to Defendants' failure to produce Ak-Chin's documents in compliance with this Court's instructions, and forcing a discovery dispute before this Court. *See*, *e.g.*, *Bolger v. District of Columbia*, 248 F.R.D. 339, 346 (D.D.C. 2008) (finding the award of attorneys fees and costs to plaintiff "just and proportionate" to defendant's discovery violations that required plaintiff to shoulder costs in its "persistent, but reasonable, discovery efforts" to obtain certain documents);

15

*Myrdal*, 2007 WL 1655875, *4 (finding that award of attorneys fees appropriate for defendant's failure to provide timely answers to plaintiff's interrogatories and document requests). It is clear that this Court expected the parties here to "sit down together" and cooperate informally, without its intervention, to produce Ak-Chin's records. (*See* Tr. of Feb. 25, 2008 Status Conference at 24.) Having that informal process "go[] nowhere" strongly suggests that attorneys fees and costs are appropriate here. (*Id*.) Furthermore, it would be unjust not to order Defendants pay Ak-Chin attorneys fees incurred only because Defendants took an unreasonable position.

Finally, in clear dereliction of their duties as Trustee-Delegates, Defendants have failed to provide Ak-Chin with records relating to its trust assets, causing prejudice, to its own beneficiary, vis-à-vis third parties. Such a violation should not go unnoticed by this Court. *See, e.g.*, *Bolger*, 248 F.R.D. at 346-47 (finding that defendant's discovery violations resulted in a "consistent pattern . . . whereby plaintiffs had to fight to obtain almost every relevant document," plaintiffs were prejudiced by that pattern and attorneys fees were therefore warranted).

In sum, as this Court is well aware, Ak-Chin has since April 2007 sought its trust records relating to certain rights of way in and around its reservation – the absence of which has and will prejudice Ak-Chins dealings with third parties. (Carlyle Decl. at ¶ 8.) Moreover, Ak-Chin has dedicated a considerable amount of time to obtaining its trust records through the informal discovery process in good faith, bearing Defendants' consistent "check is in the mail" response to those requests for over one year. Now, Defendants expect to avoid yet again production of Ak-Chin's key trust records by asserting general objections that have no basis in law. Certainly Ak-Chin's attorneys fees and costs associated with bringing this motion are just and proportionate to this persistent pattern of discovery lapses by Ak-Chin's trustee.

US2000 11015895.1

III.    **Requested Relief**

Now, Defendants' only option is to produce the documents as requested by Ak-Chin on August 5th and pursuant to this Court's process – a predicament entirely of its own doing and against this Court's specific order.  Accordingly, Plaintiff seeks the following order pursuant to this Court's authority under Fed. R. Civ. P. 37:

(1)    Overruling Defendants' Objection to Plaintiff's Request for Production [Dkt. # 68] and all objections contained therein;

(2)    Declaring any future, additional objections to Ak-Chin's requests to be waived;

(3)    Compelling production of all documents requested by Plaintiff in its August 5th filing at the offices of Kilpatrick Stockton, LLP, 607 14th Street NW, Suite 900, Washington, D.C. 20005 within 15 days of the entry of the order; and

(4)    Awarding attorneys fees and costs incurred in preparing and obtaining the order sought herein under Fed. R. Civ. P. 37(a)(5)(A).

This 4th day of September, 2008.

Respectfully submitted,

/s/ Keith Harper
KEITH HARPER
D.C. Bar No. 451956
E-mail: kharper@kilpatrickstockton.com
G. WILLIAM AUSTIN
D.C. Bar No. 478417
E-mail: baustin@kilpatrickstockton.com
CATHERINE F. MUNSON
Georgia Bar No. 529621
Admitted *pro hac vice*
KILPATRICK STOCKTON LLP
607 14th Street, NW
Washington, D.C. 20005
Phone: (202) 508-5800
*Attorneys for Plaintiff*
The Ak-Chin Indian Community

17